IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

------------------------- x
                          :
In re:                    :   Chapter 11
                          :
HAYNES INTERNATIONAL, INC., et al.,[1]   :   Case No. 04-05364 (AJM)
                          :
        Debtors.          :   Jointly Administered
                          :
------------------------- x

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
UNDER 11 U.S.C. §§ 1129(a) AND (b) AND FED. R. BANKR.
P. 3020 CONFIRMING THE FIRST AMENDED JOINT PLAN OF
REORGANIZATION OF HAYNES INTERNATIONAL, INC. AND
ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION,
AS FURTHER MODIFIED**

---

---

[1]       The Debtors are the following entities: Haynes International, Inc., Haynes Holdings, Inc.,
Haynes Specialty Steels Company and Haynes Sour Gas Tubulars, Inc.

DOCUMENT NO. 411

Upon the motion, dated May 26, 2004 (Docket No. 260) (the "Motion"), of Haynes International, Inc. ("Haynes") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for the entry of an order approving (i) procedures and materials utilized to provide notice of the disclosure statement hearing and procedures for filing objections to the Disclosure Statement (as defined below); (ii) the Debtors' Disclosure Statement (as defined below); (iii) record date, voting deadline and procedures for temporary allowance of certain claims; (iv) procedures for filing objections to the First Amended Plan of Reorganization of Haynes International, Inc. and Its Affiliated Debtors and Debtors-in-Possession (the "Original Plan");[2] (v) solicitation procedures for confirmation; and (vi) hearing date to consider confirmation of the Plan (defined below); and based upon (i) the Bankruptcy Court's review of the Certificate of Publication of Carolyn Pitts, Certificate of Publication of Toby Breiten, Certificate of Publication of Karen Mullins, the Kurtzman Carson Consultants Certificate of Mailing with Respect to Solicitation Materials (the "KCC Certificate"), the Innisfree Affidavit of Mailing with Respect to Solicitation Materials (the "Innisfree Affidavit"), and the Declaration of Chris Schepper, Certifying Tabulation of Ballots Regarding Vote on First Amended Plan of Reorganization of Haynes International, Inc. and Its Affiliated Debtors and Debtors-in-

---

[2]    Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Original Plan. Any term used in the Original Plan or this order (the "Confirmation Order") that is not defined in the Original Plan or this Confirmation Order, but that is used in the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1

Possession (the "Voting Report"), filed on August 13, 2004, (ii) the Memorandum of Law in Support of Confirmation of the Original Plan (as modified by the modifications set forth herein, the "Plan"), a copy of which Plan is attached hereto as Exhibit 1, filed by the Debtors on August 13, 2004, (iii) the Declarations of Marcel Martin (the "Martin Declaration") and Michael Dieber (the "Dieber Declaration") in support of Confirmation of the Plan filed by the Debtors on August 13, 2004, (iv) all of the evidence proffered or adduced at, objections filed in connection with, and arguments of counsel made at, the Confirmation Hearing (as defined below), and (v) the entire record of these Chapter 11 Cases; and after due deliberation thereon and good and sufficient cause appearing therefor, the Bankruptcy Court hereby makes the following findings of fact and conclusions of law.[3]

THE BANKRUPTCY COURT FINDS AND CONCLUDES THAT:

A.    Filing Of First Amended Plan.  On June 28, 2004, the Debtors filed the Plan and the Disclosure Statement with Respect to First Amended Joint Plan of Reorganization of Haynes International, Inc. and Its Affiliated Debtors and Debtors-in-Possession (as transmitted to parties-in-interest, the "Disclosure Statement").

B.    Solicitation Procedures Order.  On June 28, 2004, the Bankruptcy Court entered an order (the "Solicitation Procedures Order") that, among other things, (i) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017, (ii) fixed

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

August 16, 2004, as the date for the commencement of the hearing to consider confirma-

tion of the Original Plan (the "Confirmation Hearing"), (iii) approved the form and

method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"), and

(iv) established certain procedures for soliciting and tabulating votes with respect to the

Original Plan.

C.     Transmittal Of Solicitation Package.  The Confirmation Hearing Notice,

the Disclosure Statement, the Original Plan, the Solicitation Procedures Order, a ballot

and return envelope (such ballot and envelope being referred to as a "Ballot"), were

transmitted to Classes 3, 4, and 6 (collectively, the "Voting Classes") in accordance with

Fed. R. Bankr. P. 3017(d), all as set forth in the KCC Affidavit and Innisfree Affidavit.

In addition, as to Class 7, the Notice to Other Old Equity Interests of Non-Voting Status

was transmitted, as set forth in the Innisfree Affidavit.

D.     Publication Of Confirmation Hearing Notice.  The Debtors published the

Confirmation Hearing Notice in The Wall Street Journal (National Edition), the Indianap-

olis Daily Star and The Kokomo Tribune on July 6, 2004.[4]

E.     Voting Reports.  On August 13, 2004, the Debtors filed the Voting

Report, certifying the method and results of the Ballot tabulation for each of the

Voting Classes voting to accept or reject the Original Plan.

---

[4]     See Certificate of Publication of Carolyn Pitts in The Kokomo Tribune (Docket No. 352);
Certificate of Publication of Toby Breiten in The Wall Street Journal (National Edition)
(Docket No. 353); Certificate of Publication of Karen Mullins in the Indianapolis Daily Star
(Docket No. 354).

F.    Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C.

§§ 157(b)(2) And 1334(a)).  The Bankruptcy Court has jurisdiction over the Chapter

11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28

U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28

U.S.C. § 157(b)(2), and the Bankruptcy Court has exclusive jurisdiction to determine

whether the Plan complies with the applicable provisions of the Bankruptcy Code

and should be confirmed.

G.    Judicial Notice.  The Bankruptcy Court takes judicial notice of the

docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court

and/or its duly-appointed agent, including, without limitation, all pleadings and other

documents filed, all orders entered, and all evidence and arguments made, proffered

or adduced at, the hearings held before the Bankruptcy Court during the pendency of

the Chapter 11 Cases, including but not limited to the hearing held on June 28, 2004,

to consider the adequacy of the Disclosure Statement.

H.    Transmittal And Mailing Of Materials; Notice.  Due, adequate and

sufficient notice of the Disclosure Statement and Plan and of the Confirmation

Hearing, along with all deadlines for voting on or filing objections to the Plan, has

been given to all known holders of Claims in accordance with the procedures set

forth in the Solicitation Procedures Order.  The Disclosure Statement, Original Plan,

Ballots, Solicitation Procedures Order, Confirmation Hearing Notice, Unimpaired

Creditors Notice, Notice of Nonvoting Status were transmitted and served in

4

substantial compliance with the Solicitation Procedures Order and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other bar dates and hearings described in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules and the Solicitation Procedures Order, and no other or further notice is or shall be required.

I.    Solicitation. Votes for acceptance or rejection of the Plan were solicited in good faith and complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations.

J.    Ballots. All procedures used to distribute solicitation materials to the applicable holders of Claims and Interests and to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court for the Southern District of Indiana, Indianapolis Division and all other applicable rules, laws, and regulations.

K.    Impaired Classes That Have Voted To Accept The Plan. As evidenced by the Voting Report, which certified both the method and results of the voting, pursuant to the requirements of sections 1124 and 1126 of the Bankruptcy Code, at least one Impaired Class of Claims, determined without including any

acceptance by an insider of any of the Debtors, has voted to accept the Plan with respect to each Debtor.

L.    Class 7 Deemed To Have Rejected The Plan. Holders of Interests in Class 7 are not entitled to receive any distribution under the Plan under any circumstance on account of their Interests.  Since none of the holders of Interests in Class 7 are unconditionally entitled to receive a distribution under the Plan, pursuant to Section 1126(g) of the Bankruptcy Code, such Class is conclusively presumed to have rejected the Plan, and the votes of Interestholders in such Class therefore were not required to be solicited.

M.    Burden Of Proof. The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code, by a preponderance of the evidence, which is the applicable evidentiary standard in this Bankruptcy Court.  The Bankruptcy Court also finds that the Debtors have satisfied the elements of sections 1129(a) and (b) of the Bankruptcy Code under the clear and convincing standard of proof.

N.    Plan Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

1.    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). In addition to Administrative Claims and Priority Tax Claims (which are not required to be classified), Article III of the Plan designates five (5) Classes of Claims and two (2) Classes of Interests.  The Claims and Interests placed in each Class are substantially similar to other Claims or Interests in each such Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and

Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.    Specification Of Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Section 4.1 of the Plan specifies the Classes of Claims that are Unimpaired. Thus, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

3.    Specification Of Treatment Of Impaired Classes (11 U.S.C. § 1123(a)(3)). Section 4.2 of the Plan specifies the Classes of Claims and Interests that are Impaired under the Plan. Article V of the Plan specifies the treatment of Claims and Interests in all such Classes. Thus, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

4.    No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim has agreed to less favorable treatment with respect to such Claim. Thus, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

5.    Implementation Of Plan (11 U.S.C. § 1123(a)(5)). The Plan provides adequate and proper means for implementation of the Plan, including, without limitation, (a) the substantive consolidation of the Debtors' estates; (b) the continued corporate existence of the Debtors (except to the extent that the Restruc-turing Transactions set forth in the Plan call for the merger or dissolution of certain Affiliate Debtors); (c) the corporate constituent documents that will govern Reorga-nized Haynes and the other Reorganized Debtors after the Effective Date; (d) entry into the Post-Effective Date Facility and the Registration Rights Agreement; (e) issuance of the New Common Stock; and (f) the execution, delivery, filing or recording of all contracts, instruments, releases, indentures, and other agreements or documents related to the foregoing. Thus, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

6.    Prohibition Against Issuance Of Non-Voting Equity Securities And Provisions For Voting Power Of Classes Of Securities (11 U.S.C. § 1123(a)(6)). Section 7.5 of the Plan provides that the certificates of incorporation of the Reorga-nized Debtors will prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code. Such statutory provisions have been incorporated into the certificates of incorporation of the Reorganized Debtors, as set forth in Plan Exhibit B.

7.    Selection Of Officers And Directors (11 U.S.C. § 1123(a)(7)). In Section 7.8 of the Plan, as identified publicly prior to the Confirmation Hearing, or as otherwise announced at the Confirmation Hearing, the Debtors and the Creditors Committee properly and adequately disclosed or otherwise identified the procedures for determining the identity and affiliations of all individuals or entities proposed to serve on or after the Effective Date as officers or directors of the Reorganized Debtors. The appointment or employment of such individuals or entities and the proposed compensation and indemnification arrangements for officers and directors are consistent with the interests of Claimholders and Interestholders and with public policy. Thus, section 1123(a)(7) of the Bankruptcy Code is satisfied.

8.    Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (a) distributions to holders of Claims, (b) the disposition of executory contracts and unexpired leases, (c) the retention of, and right to enforce, sue on, settle or compromise (or refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not waived and released under the Plan, (d) resolution of Disputed Claims and Disputed Interests, (e) allowance of certain Claims, (f) indemnification obligations, (g) releases by the Debtors and Debtors-in-Possession, and (h) releases by holders of Claims and Interests.

9.    Fed. R. Bankr. P. 3016(a). The Plan is dated and identifies the entities submitting it, thereby satisfying Fed. R. Bankr. P. 3016(a).

O.    Debtors' Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically, the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code. The Debtors have complied with the applicable provisions of the Bankruptcy Code, including as provided or permitted by orders of the Bankruptcy Court, the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Plan, the

8

Disclosure Statement, the Ballots and related documents and notices, and in solicit-

ing and tabulating votes on the Plan.

      P.      Plan Proposed In Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors

have proposed the Plan in good faith and not by any means forbidden by law, thereby

satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan

has been proposed in good faith, the Bankruptcy Court has examined the totality of

the circumstances surrounding the filing of the Chapter 11 Cases and the formulation

of the Plan.  See Bankruptcy Rule 3020(b).  The Chapter 11 Cases were filed, and

the Plan was proposed, with the legitimate and honest purpose of reorganizing and

maximizing the value of each of the Debtors and the recovery to Claimholders and

Interestholders under the circumstances of these cases.

      Q.      Payments For Services Or Costs And Expenses (11 U.S.C.

§ 1129(a)(4)). Any payment made or to be made by the Debtors for services or for

costs and expenses in connection with the Chapter 11 Cases, including all adminis-

trative expense and substantial contribution claims under sections 503 and 507 of the

Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11

Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court

as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

      R.      Directors, Officers And Insiders (11 U.S.C. § 1129(a)(5)). The

Debtors have complied with section 1129(a)(5) of the Bankruptcy Code and have

disclosed the initial officers of the Reorganized Debtors.  The Debtors have dis-

9

closed the manner for selection of the initial board of directors of Reorganized

Haynes.  Upon the Effective Date, the new board of directors of Reorganized Haynes

(the "New Board of Reorganized Haynes") shall consist of seven (7) directors,

including Francis J. Petro (or in the event of his death, incapacity, or resignation, the

chief executive officer of Reorganized Haynes) and six representatives designated by

the Creditors Committee.  Members of the New Board of Reorganized Haynes were

designated by the Creditors Committee pursuant to the Notice by Creditors Commit-

tee of Designation of Individuals to Serve as Directors of Reorganized Haynes

(entered on August 13, 2004) in accordance with Section 7.8(c) of the Plan.  From

and after the Effective Date, the initial board of directors of the Reorganized Debtors

other than Reorganized Haynes shall be the same as those Persons serving as

directors of Reorganized Haynes.  The existing senior officers of the Debtors shall

serve as senior officers of the Reorganized Debtors in their current capacities after

the Effective Date, subject to the terms of the applicable employment agreements

and the rights of the respective boards of directors.  On August 2, 2004, the Debtors

filed Exhibit D to the Plan, which, among other things, discloses the compensation to

be paid to management, the requirements of section 1129(a)(5) of the Bankruptcy

Code have been met.

     S.    No Rate Changes (11 U.S.C. § 1129(a)(6)).  Section 1129(a)(6) of the

Bankruptcy Code is satisfied because the Plan does not provide for any change in

rates over which a governmental regulatory commission has jurisdiction.

10

T.      Best Interests Test (11 U.S.C. § 1129(a)(7)). The Plan satisfies

section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis in Appendix C

to the Disclosure Statement, the Dieber Declaration, the Martin Declaration and

evidence adduced at the Confirmation Hearing (1) are persuasive, credible and

accurate as of the dates such evidence was prepared, presented, or proffered,

(2) either have not been controverted by other persuasive evidence or have not been

challenged, (3) are based upon reasonable and sound assumptions, (4) provide a

reasonable estimate of the liquidation values of the Debtors upon conversion to a

case under chapter 7 of the Bankruptcy Code, and (5) establish that each holder of a

Claim or Interest in an Impaired Class that has not accepted the Plan will receive or

retain under the Plan, on account of such Claim or Interest, property of a value, as of

the Effective Date of the Plan, that is not less than the amount that it would receive if

the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

U.      Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(8)). All voting

Impaired Classes as set forth on the ballot reports attached as Exhibits to the Voting

Report have voted to accept the Plan. Class 7 is deemed to have rejected the Plan

and, accordingly, confirmation is sought pursuant to 11 U.S.C. § 1129(b).

V.      Treatment Of Administrative And Priority Tax Claims And Other

Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims

and Other Priority Claims under the Plan satisfies the requirements of section

1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax

11

Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

W.    Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)). Each Impaired Class of Claims and Interests not listed in paragraph U above has voted to accept the Plan. Thus, section 1129(a)(10) of the Bankruptcy Code is satisfied.

X.    Feasibility (11 U.S.C. § 1129(a)(11)). The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The financial projections in **Appendix B** to the Disclosure Statement, the Martin Declaration and the Dieber Declaration and evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence or sufficiently challenged in any of the objections to the Plan, and (iii) establish that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or the Reorganized Debtors.

Y.    Payment Of Fees (11 U.S.C. § 1129(a)(12)). The Debtors have paid or, pursuant to Sections 1.3 and 2.1 of the Plan, will pay by the Effective Date fees payable under 28 U.S.C. § 1930, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

Z.    Continuation Of Retiree Benefits (11 U.S.C. § 1129(a)(13)). As required by section 1129(a)(13) of the Bankruptcy Code, Sections 7.9 and 7.10 of the Plan provide that, following the Effective Date of the Plan, the payment of all retiree benefits (as defined in section 1114 of the Bankruptcy Code), if any, will continue at

12

the levels established pursuant to subsections (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to the entry of this Confirmation Order, for the duration of the periods the Debtors have obligated themselves to provide such benefits, thereby satisfying section 1129(a)(13) of the Bankruptcy Code.

AA.    Section 1129(b)/Confirmation Of The Plan Over Nonacceptance Of Impaired Classes. Class 7 Other Old Equity Interests is an Impaired Class of Interests that is deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g). Pursuant to section 1129(b) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that not all Impaired Classes have voted to accept the Plan. All of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8), with respect to such Class, have been met. With respect to Class 7, no holders of Interests junior to the holders of Interests in such Class will receive or retain any property under the Plan on account of such Interests, and, as evidenced by the uncontroverted valuations and estimates contained in the Disclosure Statement and put into evidence at the Confirmation Hearing, no Class of Claims or Interests senior to any Class 7 is receiving more than full payment on account of such Claims or Interests. Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by section 1129(b) of the Bankruptcy Code.

AB.    Principal Purpose Of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

13

AC.   <u>Modifications To The Plan</u>.  The modifications to the Original Plan described and/or set forth beginning at paragraph 51 hereof constitute technical changes and/or changes with respect to particular Claims by agreement with holders of such Claims, and do not materially adversely affect or change the treatment of any Claims or Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Original Plan.

AD.   <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  The Debtors and their agents, representatives, attorneys, and advisors have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Solicitation Procedures Order and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 11.7 of the Plan.

AE.   <u>The Reorganized Debtors Will Not Be Insolvent Nor Left With Unreasonably Small Capital</u>.  As of the occurrence of the Effective Date and after taking into account the transactions contemplated by the Plan, on a consolidated basis (1) the fair saleable value of the property of the Reorganized Debtors will be not less than the amount that will be required to pay the probable liabilities on the Reorganized Debtors' then existing debts as they become absolute and matured

14

considering all financing alternatives and potential asset sales reasonably available to the Reorganized Debtors and (2) the Reorganized Debtors' capital is not unreasonably small in relation to their business or any contemplated or undertaken transaction.

AF.   Executory Contracts.  The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their executory contracts and unexpired leases as set forth in Article VIII of the Plan, including the modified employment/severance agreements attached to the Plan as Exhibit D.  Each assumption or rejection of an executory contract or unexpired lease pursuant to Sections 8.1 and 8.2 of the Plan shall be legal, valid and binding upon the applicable Debtor or Reorganized Debtor and all non-Debtor parties to such executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been effectuated pursuant to an appropriate authorizing order of the Bankruptcy Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

AG.   Adequate Assurance.  The Debtors have cured, or provided adequate assurance that the Reorganized Debtors will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases which are being assumed by the Debtors pursuant to the Plan (the "Assumed Contracts and Leases").

AH.   Releases and Discharges.  The releases and discharges of Claims and Causes of Action described in Article XI of the Plan constitute good faith compromises and settlements of the matters covered thereby.  Such compromises and

15

settlements are made in exchange for consideration and are in the best interests of holders of Claims and Interests, are fair, equitable, reasonable, and are integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan. Each of the discharge, release, indemnification and exculpation provisions set forth in the Plan: (1) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), (b), and (d); (2) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (3) is an integral element of the transactions incorporated into the Plan; (4) confers material benefit on, and is in the best interest of, the Debtors, their estates and their creditors; (5) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; and (6) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

AI.    <u>Substantive Consolidation</u>. The substantive consolidation of the Debtors' Estates for Plan purposes, as described in Section 7.2 of the Plan, will promote an equitable distribution of the Debtors' assets and is appropriate under section 105 of the Bankruptcy Code. Among the factors supporting the substantive consolidation of the Debtors' Estates are the following: (i) the Debtors consist of Haynes and three (3) of its affiliates, (ii) creditors generally view the Debtors as a single economic unit, (iii) the Debtors have historically issued consolidated financial

16

statements and filed consolidated tax returns, (iv) the Debtors do not maintain separate accounting records in the general ledger, and (v) the Debtors have common officers and directors.

AJ.    <u>Conditions To Confirmation</u>.  The conditions to Confirmation set forth in Section 12.1 of the Plan have been satisfied, waived or will be satisfied by entry of this Confirmation Order.

AK.    <u>Conditions To Consummation</u>.  Each of the conditions to the Effective Date, as set forth in Section 12.2 of the Plan, is reasonably likely to be satisfied. The conditions to the Effective Date, set forth in Section 12.2 of the Plan, shall be subject to waiver by the Debtors (after consultation with the Creditors Committee), without any further notice to parties-in-interest or the Bankruptcy Court and without a hearing as provided in Section 12.3 of the Plan, <u>provided</u>, <u>however</u>, that any such waiver(s) shall not affect the rights and remedies of the Postpetition Lenders under the Postpetition Facility Order, Section 10.1 of the Plan or under applicable law.

AL.    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court properly may retain jurisdiction over the matters set forth in Article XIII of the Plan.

AM.    <u>Post-Effective Date Facility</u>.  The Post-Effective Date Facility is an essential element of the Plan and entry into the Post-Effective Date Facility in substantially the form submitted to the Court as <u>Exhibit F</u> to the Plan with such terms and modifications to be further negotiated in accordance with the Commitment Letter is in the best interests of the Debtors, their estates and their creditors.  The

17

Debtors have exercised reasonable business judgment in determining to enter into the Post-Effective Date Facility. The Debtors have provided sufficient and adequate notice of the Post-Effective Date Facility, including any material modifications to the Post-Effective Date Facility or to the Commitment Letter with respect thereto, to all parties-in-interest, including, the Creditors Committee. All documents necessary to implement the Plan including, without limitation, the Post-Effective Date Credit Agreement, shall, upon execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

AN. <u>Registration Rights Agreement</u>. The Registration Rights Agreement is an essential element of the Plan and entry into the Registration Rights Agreement is in the best interests of the Debtors, their estates and their creditors. The Debtors have exercised reasonable business judgment in determining to enter into the Registration Rights Agreement on the terms and in the form set forth in <u>Exhibit E</u> to the Plan, or in a form substantially similar thereto. The Debtors have provided sufficient and adequate notice of the Registration Rights Agreement, including any material modifications to the Registration Rights Agreement, to all parties-in-interest, including, without limitation, the Creditors Committees. The Registration Rights Agreement shall, upon execution, be valid, binding, and enforceable and shall not be in conflict with any federal or state law.

AO. <u>Distributions Of New Common Stock</u>. Any distributions of New Common Stock as contemplated by the Plan by the Debtors, the Indenture Trustee

18

and the Servicer are exempt from the requirements of section 5 of the Securities Act and State Registration Requirements by virtue of section 1145 of the Bankruptcy Code.

AP.    Re-Sale Under 1145. The New Common Stock that is issued in reliance on section 1145 of the Bankruptcy Code may be resold by the holders thereof without registration unless the holder is an "underwriter" with respect to such securities, as defined in section 1145(b)(1) of the Bankruptcy Code.

AQ.    Defined Benefit Plans. Haynes sponsors the Haynes International, Inc. Pension Plan (the "Pension Plan"), a defined benefit plan covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1301-1461 (2000). Pursuant to Section 7.9 of the Plan, the Debtors intend to continue the Pension Plan. As part of their continuation of the Pension Plan, the Debtors intend to satisfy the minimum funding standards under ERISA and the Internal Revenue Code, pay all Pension Benefit Guaranty Corporation (the "PBGC") insurance premiums, and administer and operate the Pension Plan in accordance with its terms and ERISA. Notwithstanding the foregoing the PBGC filed three unliquidated claims in these cases, Claim Nos. 359, 439 and 448 (the "PBGC Claims").[5] The Plan provides that the Pension Plan will be continued by the Reorganized

---

[5]    In addition, the PBGC filed Claim Nos. 440, 441, 442, 443, 444, 445, 446, 447, and 449, which the Debtors objected to as duplicate pursuant to the Debtors' First Omnibus Objection to Claims Under 11 U.S.C. §§ 102(1), 105(a) and 502(b) and Fed. R. Bankr. P. 3007 (Docket No. 328).

19

Debtors. Accordingly, on the Effective Date, the PBGC will be deemed to have withdrawn the PBGC Claims with respect to the Pension Plan.

AR. <u>Preservation Of Causes Of Action</u>. It is in the best interests of the creditors and interestholders that the causes of action that are not expressly released under the Plan be retained by the Reorganized Debtors pursuant to Section 7.15 of the Plan in order to maximize the value of the Debtors' Estates.

ACCORDINGLY, THE BANKRUPTCY COURT HEREBY ORDERS THAT:

1. <u>Confirmation</u>. The Plan, which consists of the Original Plan and the modifications set forth herein and <u>Exhibit 1</u> hereto, which are hereby incorporated into and constitute a part thereof, is approved and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan and the exhibits thereto (in the final form thereof to be filed on or before the Effective Date) are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

2. <u>Objections</u>. All Objections to confirmation of the Plan that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

3. <u>Provisions Of Plan And Order Nonseverable And Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

20

4.      Plan Classification Controlling.  The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtors' Claimholders or Interestholders in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Plan for distribution purposes, (c) may not be relied upon by any Claimholder or Interestholder as representing the actual classification of such Claims or Interests under the Plan for distributions purposes, and (d) shall not be binding on the Reorganized Debtors, the Estates or the Debtors.

5.      Effects Of Confirmation; Immediate Effectiveness; Successors And Assigns.  The stay contemplated by Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order.  Subject to the provisions of Sections 12.1 and 12.2 of the Plan, and notwithstanding any otherwise applicable law, immediately upon the entry of this Confirmation Order, the terms of the Plan (including the Plan Exhibits and all documents and agreements executed pursuant to the Plan) and this Confirmation Order are deemed binding upon (a) the Debtors, (b) the Reorganized Debtors, (c) all holders of Claims against and Interests in the Debtors, whether or not Impaired under the Plan and whether or not, if Impaired, such holders accepted the Plan, (d) each Person acquiring property under the Plan, (e) any other party-in-interest, (f) any

21

Person making an appearance in these Chapter 11 Cases, and (g) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians.

      6.    <u>Continued Corporate Existence; Vesting Of Assets</u>. Except as otherwise provided in the Plan, each Reorganized Debtor shall continue to exist after the Effective Date as a separate corporate or other legal entity, with all the powers of a corporation or legal entity under applicable law in the jurisdiction in which each applicable Debtor is incorporated or organized and pursuant to the respective certificate of incorporation and bylaws or other organizational documents in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws or other organizational documents are amended by the Plan. Except as otherwise explicitly provided in the Plan or in this Confirmation Order, including, without limitation, Section 11.1 of the Plan and the Plan Modifications set forth herein, on the Effective Date, all property comprising the Estates (including Retained Actions and Retained Avoidance Claims) shall revest in each of the Reorganized Debtors that owned such property or interest in property as of the Effective Date, free and clear of all Claims, liens, charges, encumbrances, rights and interests of creditors and equity security holders. As of the Effective Date, the Reorganized Debtors may operate their business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of

22

any restriction of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Confirmation Order.

       7.    <u>Substantive Consolidation</u>. The substantive consolidation of the Debtors for Plan purposes, including voting and distribution purposes, is approved. Accordingly, for Plan purposes, (i) all guaranties of any Debtor of the payment, performance, or collection of another Debtor with respect to any Class of Claims or Interests shall be deemed eliminated and cancelled, (ii) any obligation of any Debtor and all guaranties with respect to any Class of Claims or Interests executed by one or more of the other Debtors and any joint or several liability of any of the Debtors shall be treated as a single obligation, and any obligation of two or more Debtors, and all multiple Impaired Claims against the Debtors on account of such joint obligations shall be treated and Allowed only as a single Claim against the consolidated Debtors; and (iii) each Claim filed in the Chapter 11 Cases of any Debtor shall be deemed filed against the consolidated Debtors and shall be deemed a Claim against and an obligation of the consolidated Debtors. The substantive consolidation of the Debtors for Plan purposes shall not (a) affect the legal and corporate structures of the Debtors or Reorganized Debtors, subject to the right of the Debtors or the Reorganized Debtors to effect the Restructuring Transactions contemplated by the Plan, (b) cause any Debtor to be liable for any Claim or Interest under the Plan for which it otherwise is not liable, and the liability of any Debtor for any such Claim or Interest will not be affected by such substantive consolidation, (c)

23

affect Intercompany Claims of Debtors against Debtors, except as otherwise provided in the Plan, or (d) affect the Interests in the Affiliate Debtors, except as otherwise provided in the Plan and as may be required by the Restructuring Transaction.

8. <u>Intercompany Claims And Interests In The Affiliate Debtors</u>. The treatment of Intercompany Claims and Interests in the Affiliate Debtors provided in Sections 5.5 and 7.7 of the Plan is approved in its entirety.

9. <u>Release Of Liens</u>. Except as otherwise provided in the Plan or this Confirmation Order, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, including the Post-Effective Date Facility, on the Effective Date and/or concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, liens or other security interests against the property of any Estate are fully released and discharged (except to the extent Reinstated under the Plan), and all right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and assigns.

10. <u>Retained Assets</u>. To the extent the succession to assets of the Debtors by the Reorganized Debtors pursuant to the Plan are deemed to constitute "transfers" of property, such transfers of property to Reorganized Debtors (a) are or shall be legal, valid, and effective transfers of property, (b) vest or shall vest the

24

Reorganized Debtors with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or this Confirmation Order, (c) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law, and (d) do not and shall not subject the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws affecting successor or transferee liability.

11.    <u>Discharge, Releases, Limitations Of Liability And Indemnification</u>. The discharge of the Debtors and any of their assets or properties provided in Section 11.2 of the Plan, the releases set forth in Sections 11.4 and 11.5 of the Plan, and the exculpation and limitation of liability provisions set forth in Section 11.7 of the Plan, are deemed incorporated in this Confirmation Order as if set forth in full herein and are hereby approved in their entirety.

12.    <u>Injunction</u>. Except as otherwise specifically provided in the Plan and except as may be necessary to enforce or remedy a breach of the Plan, the Debtors, and all Persons who have held, hold or may hold Claims or Interests and any successors, assigns or representatives of the foregoing shall be precluded and permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner any Claim, action or other proceeding of any kind with respect to any Claim, Interest or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (b) the

25

enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any Claim, Interest or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (c) creating, perfecting or enforcing any encumbrance of any kind with respect to any Claim, Interest or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, and (d) asserting any Claims that are released hereby.

13.    <u>Automatic Stay</u>.  The stay in effect in the Chapter 11 Cases pursuant to section 105 or 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunction set forth in the preceding paragraph and/or sections 524 and 1141 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that nothing herein shall bar the filing of financing documents (including uniform commercial code financing statements, security agreements, leases, mortgages, trust agreements, bills of sale, and applications for aircraft registration) or the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

14.    <u>Matters Relating To Implementation Of The Plan; General Authorizations</u>.  The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor or any officer thereof to take any and all actions

26

necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.  In addition to the authority to execute and deliver, adopt, assign, or amend, as the case may be, the contracts, leases, instruments, releases and other agreements specifically granted in this Confirmation Order, the Debtors and the Reorganized Debtors are authorized and empowered, without action of their respective stockholders or boards of directors, to take any and all such actions as any of their executive officers may determine are necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order, including:  (a) enter into, execute and deliver, adopt or amend, as the case may be, any of the contracts, leases, instruments, releases and other agreements or documents and plans to be entered into, executed and delivered, adopted or amended in connection with the Plan, and, following the Effective Date, each of such contracts, leases, instruments, releases and other agreements shall be a legal, valid and binding obligation of the applicable Reorganized Debtor and enforceable against such Reorganized Debtor in accordance with its terms; (b) issue for distribution or reserve for issuance in accordance with the terms of the Plan, the New Common Stock (upon such issuance, all such shares shall be duly authorized, validly issued and outstanding, fully paid, nonassessable, free and clear of any mortgage, lien, pledge, security interest or other encumbrance of any kind and not subject to pre-emptive or similar rights of third parties); or (c) authorize the Reorganized Debtors

to engage in any of the activities set forth in this paragraph or otherwise contemplated by the Plan. Each of the chief executive officer and President, chief financial officer of the Debtors, or their respective designees, will be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, this Confirmation Order and any and all documents or transactions contemplated by the Plan or this Confirmation Order, all without further application to or order of the Bankruptcy Court and whether or not such actions or documents are specifically referred to in the Plan, the Disclosure Statement, the Solicitation Procedures Order, this Confirmation Order or the exhibits or appendices to any of the foregoing, and the signature of such officer on a document shall be conclusive evidence of the officer's determination that such document and any related actions are necessary and appropriate to effectuate or further evidence the terms and conditions of the Plan, this Confirmation Order or other documents or transactions contemplated by the Plan or this Confirmation Order. The secretary or any assistant secretary of each Debtor or Reorganized Debtor is authorized to certify or attest to any of the foregoing actions. Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable nonbankruptcy law, any of the foregoing actions otherwise would require the consent or approval of the stockholders or the boards of directors of any of the Debtors or Reorganized Debtors, this Confirmation Order shall constitute such consent or

28

approval, and such actions are deemed to have been taken by unanimous action of the stockholders and directors of the appropriate Debtor or Reorganized Debtor.

15.    <u>Directors And Officers Of Reorganized Debtors</u>.  The existing senior officers of the Debtors shall serve in the same capacities after the Effective Date, subject to the terms of the applicable employment agreements as modified and assumed pursuant to the Plan and subject to the rights of the respective board of directors of the Reorganized Debtors.  The Bankruptcy Court approves the appointment of the initial directors of Reorganized Haynes, as disclosed at or prior to the Confirmation Hearing, as of and immediately following the Effective Date.  Notwithstanding any otherwise applicable non-bankruptcy law, directors of Reorganized Haynes shall serve an initial term for a period from the Effective Date through the date of the annual meeting that first occurs after a date which is one (1) year after the Effective Date and for one (1) year terms thereafter (with such subsequent terms subject to election by shareholder vote) as provided in the certificates of incorporation and bylaws of the Reorganized Debtors.  On the Effective Date, the term of the current members of the board of directors of Haynes Holdings, Haynes Sour Gas and Haynes Specialty Steels shall expire.  From and after the Effective Date, the initial board of directors of Reorganized Haynes Holdings (if applicable), Reorganized Haynes Sour Gas and Reorganized Haynes Specialty Steels shall be the same directors as those Persons designated as directors of Reorganized Haynes.

29

16.    Approval Of Employment, Retirement, Indemnification, And Other Related Agreements.  Pursuant to section 1142(b) of the Bankruptcy Code, without further action by the Bankruptcy Court or the stockholders or board of directors of the Reorganized Debtors, and without limiting the power or authority of the Reorganized Debtors following the Effective Date to take any and all such actions as may be permitted or required by applicable nonbankruptcy law, the Reorganized Debtors are authorized, as of the Effective Date, to:  (a) maintain, amend, or revise existing employment, retirement, indemnification, and other agreements with their respective active directors, officers, and employees who will continue in such capacities (or similar capacities) after the Effective Date, or retirement income plans, welfare benefit plans, and other plans for such Persons, subject to the terms and conditions of any such agreement, and subject to Sections 7.9, 7.10 and 8.1 of the Plan; and (b) enter into new employment, retirement, indemnification, and other agreements for active directors, officers, and employees, and retirement income plans, welfare benefits plans, and other plans for active and retired directors, officers, and employees.

17.    Continuation Of Insured Workers' Compensation Plans.  Upon occurrence of the Effective Date, the Reorganized Debtors shall continue the Insured Workers' Compensation Programs in accordance with applicable state laws. Nothing in the Plan shall be deemed to discharge, release, or relieve the Debtors or Reorganized Debtors from any current or future liability with respect to any of the

30

Insured Workers' Compensation Programs. The Reorganized Debtors shall be responsible for all valid claims for benefits and liabilities under the Insured Workers' Compensation Programs regardless of when the applicable injuries were incurred. Any and all obligations under the Insured Workers' Compensation Programs shall be paid in accordance with the terms and conditions of the Insured Workers' Compensation Programs and in accordance with all applicable laws. Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the Reorganized Debtors shall maintain all of their existing rights, including, but not limited to, any rights that they may have to amend, modify or terminate the Insured Workers' Compensation Programs.

18.     Long-Term Incentive Plan. Reorganized Haynes is authorized to implement the Long-Term Incentive Plan as described in Exhibit D to the Plan.

19.     Post-Effective Date Facility. The provisions of Section 7.14 of the Plan are approved in their entirety. Specifically, the terms of the Post-Effective Date Facility, in substantially the form set forth in the Post-Effective Date Credit Agreement documents filed as Exhibit E to the Plan, are hereby approved. The Reorganized Debtors are hereby authorized to execute such Post-Effective Date Credit Agreement on or prior to the Effective Date of the Plan, together with such other documents as the any of the applicable lenders may reasonably require in order to effectuate the Post-Effective Date Facility without further approval of the board of directors.

31

20.     <u>Preservation Of Causes Of Action</u>.  The Reorganized Debtors

shall retain and may (but are not required to) enforce all Retained Actions and all

Retained Avoidance Claims as set forth on <u>Exhibit A</u> to the Plan, and other similar

claims arising under applicable state laws, including, without limitation, fraudulent

transfer claims, if any, and all other Causes of Action of a trustee and debtor-in-

possession under the Bankruptcy Code.  A nonexclusive list of Retained Actions and

Retained Avoidance Claims is set forth on Plan <u>Exhibit A</u>.  The Debtors, in consulta-

tion with the Creditors Committee, or the Reorganized Debtors will determine

whether to bring, settle, release, compromise, or enforce any such rights (or decline

to do any of the foregoing).  The Reorganized Debtors or any successors may pursue

such litigation claims in accordance with the best interests of the Reorganized

Debtors or any successors holding such rights of action.  The failure of the Debtors

to specifically list any claim, right of action, suit or proceeding in the Debtors'

Schedules or in Plan <u>Exhibit A</u> does not, and will not be deemed to, constitute a

waiver or release by the Debtors of such claim, right of action, suit or proceeding,

and the Reorganized Debtors will retain the right to pursue such claims, rights of

action, suits or proceedings in their sole discretion and, therefore, no preclusion

doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial,

equitable or otherwise) or laches will apply to such claim, right of action, suit or

proceeding upon or after the confirmation or consummation of the Plan; provided,

however, that notwithstanding the payment on account of an Allowed Claim, the

32

Debtors or the Reorganized Debtors, as the case may be, shall retain the right to assert and/or pursue any Retained Actions against the parties subject thereto any and all rights ancillary thereto, including the right to collect judgments thereon.

      21.    <u>Exemption From Certain Taxes And Recording Fees</u>.

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security, or the making, delivery, filing or recording of any instrument of transfer under, or in connection with, the Plan shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax. Furthermore, and without limiting the foregoing, any transfers from a Debtor to a Reorganized Debtor or to any other Person pursuant to the Plan, as contemplated by the Plan, or pursuant to any agreement regarding the transfer of title to or ownership of any of the Debtors' property in the United States will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any

such tax or governmental assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

22. <u>Assumptions</u>. The executory contract and unexpired lease provisions of Article VIII of the Plan are approved. Each executory contract and unexpired lease to which the Debtors are a party shall be deemed automatically assumed and Reinstated as of the Effective Date, including the unemployment/severance agreements of certain senior management as modified (the "Assumed Contracts and Leases"), unless such executory contract or unexpired lease (a) shall have been previously rejected by the Debtors, (b) is the subject of a motion to reject filed, or a notice of rejection served pursuant to order of the Bankruptcy Court, on or before the Confirmation Date, (c) is listed on the schedule of rejected contracts and leases annexed to the Plan as <u>Exhibit G</u>, or (d) expired prior to the Effective Date and/or is no longer executory on the Effective Date by its own terms. Each of the Assumed Contracts and Leases shall be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease.

23. <u>Payments Related To Assumption Of Executory Contracts And Unexpired Leases</u>. This Confirmation Order shall constitute an order approving the assumptions described in Section 8.1 of the Plan, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The provisions (if any) of each executory contract or unexpired lease to be assumed and Reinstated under the Plan that are or may be in default shall be satisfied solely by Cure. Any Person claiming that a

34

monetary cure amount is due in connection with the assumption of any executory

contract or unexpired lease as contemplated by section 365(b) of the Bankruptcy

Code must file a monetary cure claim with the Bankruptcy Court asserting all alleged

amounts accrued through the Effective Date, if any (the "Cure Claim"), no later than

thirty (30) days after the Effective Date (the "Cure Claim Submission Deadline").

Any party failing to submit a Cure Claim by the Cure Claim Submission Deadline

shall be forever barred from asserting, collecting, or seeking to collect any amounts

relating thereto against the Debtors or Reorganized Debtors. The Debtors shall have

thirty (30) days from the Cure Claim Submission Deadline to file an objection to the

Cure Claim (the "Cure Claim Objection Deadline"). Any disputed Cure Claims shall

be resolved either consensually by the parties or by the Bankruptcy Court. Disputed

Cure Claims shall be set for status at subsequent hearings following the Cure Claim

Submission Deadline with separate evidentiary hearings to be set by the Bankruptcy

Court as needed. If the Reorganized Debtors do not dispute a Cure Claim, then the

Reorganized Debtors shall pay the Cure Claim, if any, to the claimant within twenty

(20) days after the Cure Claim Objection Deadline. Disputed Cure Claims that are

resolved by agreement or Final Order shall be paid by the Debtors within twenty (20)

days of such agreement or Final Order.

24.    Rejections. Except with respect to executory contracts and

unexpired leases that have previously been rejected or are the subject of a motion to

reject filed, or a notice of rejection served pursuant to an order of the Bankruptcy

Court, on or before the Confirmation Date, all executory contracts and unexpired

leases set forth on Exhibit G to the Plan (the "Rejected Contracts and Leases") shall

be deemed automatically rejected as of the Effective Date.  Neither the inclusion by

the Debtors of a contract or lease on Exhibit G to the Plan nor anything contained in

the Plan shall constitute an admission by the Debtors that such lease or contract is an

unexpired lease or executory contract or that any Debtor, or any of the Debtors'

Affiliates, has any liability thereunder.  All of the Rejected Contracts and Leases

shall be rejected only to the extent that any such contract or lease constitutes an

executory contract or unexpired lease.

   25. Postpetition Facility Claim.  On the Effective Date, the

Postpetition Facility Claim shall be Allowed in an amount to be agreed upon by the

Debtors and the Postpetition Lenders with notice to the Creditors Committee not less

than five (5) Business Days prior to the Effective Date.  All obligations (other than

contingent indemnity obligations) of the Debtors under the Postpetition Facility shall

be satisfied either by payment in full in Cash on the Effective Date or the amendment

and restatement of the Postpetition Credit Agreement with the Post-Effective Date

Facility on the Effective Date; consistent with the Commitment Letter and on such

terms and in form and substance satisfactory to the Debtors and Congress, with

notice to the Creditors Committee.  Notwithstanding anything to the contrary in this

Order, all of the rights, liens, claims, protections and priorities granted to the

36

Postpetition Lenders under the Postpetition Facility shall remain in full force and effect until the Postpetition Facility Claim is paid or otherwise satisfied.

26.     <u>Professional Claims And Final Fee Applications</u>. The provisions of Section 10.2 of the Plan shall govern Professional Claims, including final fee applications, payment of interim amounts, the Holdback Escrow, and post-effective date compensation and retention, and deadlines and procedures relating thereto.

27.     <u>Substantial Contribution Compensation And Expenses Bar Date</u>. Any person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code must file an application with the Clerk of the Bankruptcy Court, on or before a date which is thirty (30) days after the Effective Date (the "503 Deadline"), and serve such application on counsel for the Debtors and the Creditors Committee and as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement.

28.     <u>Other Administrative Claims</u>. All other requests for payment of an Administrative Claim (other than as set forth in Sections 10.1 and 10.2 of the Plan) must be filed with the Bankruptcy Court and served on counsel for the Debtors or Reorganized Debtors no later than thirty (30) days after the Effective Date.

Unless the Debtors, the Reorganized Debtors or another party-in-interests objects to an Administrative Claim by the Claims/Interests Objection Deadline, such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Debtors, Reorganized Debtors or another party-in-interest objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is paid or payable by the Reorganized Debtors or the Debtors in the ordinary course of business.

29.     Bar Date For Rejection Damage Claims And Related Procedures.  If the rejection by the Debtors (pursuant to the Plan or otherwise) of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against either the Debtors or the Reorganized Debtors or such entities' properties unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Debtors within thirty (30) days after service of the earlier of (a) notice of the Confirmation Order or (b) other notice that the executory contract or unexpired lease has been rejected.

30.     Collective Bargaining Agreement; Tentative Agreement.  The assumption by Debtors of the Collective Bargaining Agreement as modified by the Tentative Agreement upon the Effective Date is approved.

31.     Preservation Of Insurance.  Notwithstanding any other term or provision in this Confirmation Order or the Plan, this Confirmation Order (i) is without prejudice to any of the rights, claims or defenses of Westchester Surplus Lines Insurance Company (and possibly other ACE USA-related companies) (collectively, the "ACE USA Companies") under any of their insurance policies issued to Debtors (the "Policies") and any agreements between Debtors and the ACE USA Companies related to the Policies (together, with the Policies, the "ACE USA Agreements"); (ii) confirms that all of the terms, conditions, limitations and/or exclusions contained in the ACE USA Agreements shall remain unmodified and in full force and effect; (iii) confirms that Reorganized Debtors shall be deemed as the insureds under the ACE USA Agreements and both the Reorganized Debtors and the ACE USA Companies shall remain bound by all of the terms, conditions, limitations and/or exclusions contained in the ACE USA Agreements; (iv) confirms that the ACE USA Agreements shall not be assigned without the ACE USA Companies' express written consent (except with respect to the Restructuring Transaction); (v) confirms that nothing in the Plan shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the ACE USA Agreements, or create any direct right of action against the ACE USA Companies that does not otherwise exist under applicable non-bankruptcy law; (vi) confirms that Confirmation is without prejudice to any of the ACE USA Companies' rights and/or defenses in any subsequent litigation in which the ACE USA Companies may seek

39

any declaration regarding the nature and/or extent of any insurance coverage under the ACE USA Agreements; (vii) confirms that Reorganized Debtors shall satisfy all continuing duties and obligations of the insured under the ACE USA Agreements; and (viii) confirms that nothing in the Plan shall be construed as an acknowledgment that the ACE USA Agreements cover or otherwise apply to any Claims or that any Claims are eligible for payment under any of the ACE USA Agreements. The ACE USA Companies acknowledge that the filing of these Chapter 11 Cases, the assumption of the ACE USA Agreements in accordance with Section 365 of the Bankruptcy Code and the consummation of the Plan shall not alter or affect the Debtors' right, if any, to coverage under the ACE USA Agreements.

32.    <u>Restructuring Transactions</u>. The Restructuring Transactions contemplated by Section 7.3 of the Plan are approved and the Debtors and Reorganized Debtors and their officers are authorized to execute such documents as may be reasonably required in order to effectuate the Restructuring Transactions. Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing and recording any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the Restructuring Transactions.

33.    <u>Registration Rights Agreement</u>. Without limiting the effect of section 1145 of the Bankruptcy Code or the foregoing paragraphs, Reorganized Haynes is authorized to enter into a Registration Rights Agreement, on substantially

the terms set forth in the form attached to the Plan as <u>Exhibit E</u>, which form is hereby approved, as provided in Section 7.13 of the Plan.

34. <u>Issuance Of New Common Stock Exempt From Securities Laws</u>. The provisions of section 1145 of the Bankruptcy Code are applicable to the issuance and distribution of the New Common Stock in exchange for the recipient's Claim or Interest in the Debtors. Pursuant to and to the fullest extent permitted by section 1145 of the Bankruptcy Code, the resale of any securities issued under the Plan shall be exempt from section 5 of the Securities Act and any State Registration Requirements.

35. <u>Resolution Of Claims And Interests</u>. Except as otherwise ordered by the Bankruptcy Court, any Claim or Interest that is not an Allowed Claim or Allowed Interest shall be determined, resolved, or adjudicated in accordance with the terms of the Plan. The Debtors or Reorganized Debtors, as the case may be, may (a) until 120 days after the Effective Date (unless extended by order of the Bank- ruptcy Court) file objections in the Bankruptcy Court to the allowance of any Claim or Interest (whether or not a proof of Claim or Interest has been filed) and/or (b) amend their schedules at any time before their Chapter 11 Cases are closed.

36. <u>Cancellation Of The Existing Securities</u>. All Existing Securities are cancelled and terminated upon the occurrence of the Effective Date as provided in Sections 5.6 and 7.6 of the Plan.

41

37.     <u>Distribution Reserve</u>.  The Disbursing Agent shall withhold a separate Distribution Reserve from the property to be distributed to holders of Class 6 Old Common Stock Interests.  The amount of New Common Stock withheld as a part of the Distribution Reserve shall be equal to the amount the Reorganized Debtors reasonably determine is necessary to satisfy the distributions required to be made to the Interestholders in such Class when the allowance or disallowance of each Interest is ultimately determined.  The Disbursing Agent may request estimation for any Disputed Interest that is contingent or unliquidated (but is not required to do so).  The Disbursing Agent will also place in the Distribution Reserve any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld in the Distribution Reserve, to the extent that such property continues to be withheld in the Distribution Reserve at the time such distributions are made or such obligations arise. The Interestholder shall not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve to pay such Interest.  Nothing in the Plan or the Disclosure Statement will be deemed to entitle the Interestholder to interest accruing on or after the Petition Date on any Interest.

38.     <u>Waiver Of Distributions By Non-Employee Holders Of Old Common Stock Interests And Their Affiliates</u>.  Notwithstanding any other provision of this Confirmation Order or the Plan to the contrary, non-employee holders of Old Common Stock Interests and their affiliates, as well as any assignee(s) or trans-

42

feree(s) of the Claims of such entities, will not receive any distribution on account of any Claims that they may have against the Debtors other than the distribution of New Common Stock as set forth in this Plan; provided, however, that non-employee holders of Old Common Stock Interests and their affiliates will receive a full and complete release from the Debtors and those parties voting in favor of the Plan as set forth in Article XI of the Plan as a result of their waiver of such distribution rights.

      39.    <u>Payment Of Fees</u>.  All fees payable by the Debtors under 28 U.S.C. § 1930 shall be paid on or before the Effective Date, and the Reorganized Debtors shall thereafter pay any statutory fees that come due until the case is closed, converted or dismissed.

      40.    <u>Authorization To Consummate Plan</u>.  The Bankruptcy Court authorizes the Debtors to consummate the Plan after entry of this Confirmation Order.  The Debtors are authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, instruments of transfer, uniform commercial code financing statements, trust agreements, mortgages, indentures, security agreements, and bills of sale and to take such other actions as may be reasonably necessary to perform the terms and provisions of the Plan, all transactions contemplated by the Plan, and all other agreements related thereto.

      41.    <u>Failure To Consummate Plan And Substantial Consummation</u>. If consummation of the Plan does not occur, then the Plan, any settlement or com-promise embodied in the Plan (including the fixing or limiting to an amount certain

43

any Claim or Interest or Class of Claims or Interests), the assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be null and void. In such event, nothing contained in the Plan or this Confirmation Order, and no acts taken in preparation for consummation of the Plan, shall (a) constitute a waiver or release of any Claims by or against or Interests in the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, (c) constitute an admission of any sort by the Debtors or any other Person, or (d) be construed as a finding of fact or conclusion of law with respect thereto. Upon the occurrence of the Effective Date, the Plan shall be deemed substantially consummated.

42.    Retention Of Jurisdiction. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction as provided in the Plan over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other items and matters, jurisdiction over those items and matters set forth in Article XIII of the Plan.

43.    References To Plan Provisions. The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of

44

the Bankruptcy Court that the Plan be confirmed in its entirety. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

44.     Separate Confirmation Orders. This Confirmation Order is and shall be deemed a separate Confirmation Order with respect to each of the Debtors in each Debtors' separate Chapter 11 Case for all purposes. The Clerk of the Bankruptcy Court is directed to file and docket this Confirmation Order in the Chapter 11 Case of each of the Debtors.

45.     Filing And Recording. This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Interests existing prior to such date have been unconditionally released, discharged and terminated, and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by

45

operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any document or instruments. Each and every federal, state and local government agency is hereby directed to accept any and all documents and instruments necessary, useful or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax or similar tax imposed by state or local law.

  46. <u>Notice Of Confirmation Order And Occurrence Of Effective Date</u>. On or before the fifth (5th) Business Day following the occurrence of the Effective Date, the Debtors shall serve notice of this Confirmation Order and occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on all Claimholders, the United States Trustee and other parties-in-interest, by causing a notice of this Confirmation Order and the occurrence of the Effective Date in substantially the form of the notice annexed hereto as <u>Exhibit 2</u>, which form is hereby approved (the "Notice of Effective Date"), to be delivered to such parties by first class mail, postage prepaid; <u>provided</u>, <u>however</u>, that notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Person to whom the Debtors mailed a notice of the Bar Date or Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved    left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such

Person of that Person's new address.  The notice described herein is adequate under the particular circumstances of the Chapter 11 Cases, and no other or further notice is necessary.  Notwithstanding the foregoing, pursuant to Bankruptcy Rule 2002(l), the Debtors may satisfy the requirements of Bankruptcy Rule 2002(f)(7) with respect to any Claimholder that does not reside in the United States by publishing the Notice of Effective Date in The Wall Street Journal (National Edition) the Indianapolis Star and The Kokomo Tribune within fifteen (15) Business Days of the Effective Date.

47.  Exhibits To The Plan Will Operate As Controlling Documents.  In the event of an inconsistency between the Plan and the Exhibits to the Plan (as may be modified), the Exhibits to the Plan will control.

48.  28 U.S.C. § 157(d).  Nothing in this Confirmation Order or the Plan is intended to modify or violate 28 U.S.C. § 157(d).

49.  Post-Effective Date Financing Matters.

(a)  The Debtors shall provided Congress with a certified copy of the Confirmation Order as duly entered by the Bankruptcy Court and entered on the docket of the Clerk of the Bankruptcy Court in these Chapter 11 cases.

(b)  The Postpetition Credit Agreement and Postpetition Facility Order shall continue in full force and effect through the Effective Date.

(c)  As of and after the Effective Date subject to paragraph 26 hereof, all loans, advances, financial accommodations, borrowing and obligations outstanding under the Postpetition Credit Agreement shall continue in effect on and

47

after the Effective Date and be deemed loans, advances, financial accommodations and borrowings of or to be assumed by Haynes.

(d)     As of the  Effective Date, the liens and security interests created under or in connection with the Postpetition Credit Agreement and/or the Post-Effective Date Facility shall not be subject or subordinate to any claim of Professionals which may arise under the Postpetition Facility Order as provided in paragraph 20 of the Postpetition Facility Order.

(e)     All Exhibits to the Plan and documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto) and the execution, delivery and performance of such exhibits, documents, and agreements in substantially the form submitted at the Confirmation Hearing by the Debtors in accordance with their respective terms are approved, including, but not limited to, the Post-Effective Date Credit Agreement and Post-Effective Date Facility and all documents, instruments, and agreements contemplated thereby or to be executed in connection therewith.

(f)     The terms of the Post-Effective Date Facility, in substantially the form set forth in the Post-Effective Date Credit Agreement documents filed as Exhibit F to the Plan, are hereby approved.  The Reorganized Debtors are hereby authorized to execute such Post-Effective Date Credit Agreement documents together with such other documents as the applicable Reorganized Debtors

48

and the applicable lenders may reasonably require in order to effectuate the Post-Effective Date Facility and to pay the fees and expenses described therein.

(g)      The security interests and liens in favor of Congress granted by the Postpetition Facility Order and the Postpetition Credit Agreement shall continue in effect in favor of Congress after the Effective Date and shall not be discharged, release or terminated.  The Debtors or Reorganized Debtors are hereby authorized to grant to the applicable lenders under the Post-Effective Date Facility or other appropriate party valid, binding, enforceable and perfected security interests in and liens upon all Collateral (as defined in the Post-Effective Date Credit Agreement) specified in the Post-Effective Date Credit Agreement to secure all of the obligations under or in connection with the Post-Effective Date Credit Agreement. The Post-Effective Date Credit Agreement and each document, instrument, and agreement executed in connection therewith shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.  The security interests and liens granted pursuant to, or in connection with, the Post-Effective Date Credit Agreement (and all documents, instruments and agreements related thereto and annexes, exhibits and schedules appended thereto) shall constitute, as of the Effective Date, legal, valid and duly perfected first priority liens and security interests in and to the collateral specified therein, subject only, where applicable, to the pre-existing liens and security interests specified or

49

permitted in the Post-Effective Date Credit Agreement or the documents, instru-
ments or agreements contemplated thereby.

(h)     On the Effective Date, all of the liens and security
interests to be created under, or in connection with, the Post-Effective Date Credit
Agreement shall be deemed created and shall be valid and perfected without any
requirement of filing or recording of financing statements, mortgages or other
evidence of such liens and security interests and without any approvals or consents
from governmental entities or any other persons and regardless of whether or not
there are any errors, deficiencies or omissions in any property descriptions attached
to any filing and no further act shall be required for perfection of the liens and
security interests.  Notwithstanding the foregoing, the Debtors or Reorganized
Debtors, and any other persons granting such liens and security interests, are autho-
rized to make all filings and recordings, and to obtain all governmental approvals
and consents necessary to establish and perfect such liens and security interests under
the provisions of state, provincial, federal, or other law (whether foreign or domestic)
that would be applicable in the absence of this Confirmation Order, and will thereaf-
ter cooperate to make all other filings and recordings that otherwise would be
necessary under applicable law to give notice of such liens and security interests to
third parties.

(i)     The Debtors are authorized and empowered to execute
and deliver all documents, agreements and instruments and take all actions reason-

50

ably necessary to effectuate the consummation and implementation of the Plan, including, without limitation, the execution, delivery and performance of the Post-Effective Date Credit Agreement (substantially in the form annexed as <u>Exhibit F</u> to the Plan or filed with this Bankruptcy Court), and each other document, instrument, and agreement to be executed in connection therewith and the transactions contemplated thereby. All such actions taken or caused to be taken shall be deemed to have been authorized and approved by this Bankruptcy Court and shall be deemed effective pursuant to applicable non-bankruptcy corporate law and without further corporate act or action under applicable law and without any requirement of further action by the stockholders or directors of the Debtors. Each of such documents, instruments, and agreements will, upon execution, be valid, binding and enforceable against the Debtors and any other person who is a party thereto, and is entered into for good and valuable consideration, including the benefits of the Plan.

(j)    Based upon the record of these Chapter 11 Cases, the security interests to be granted by the Debtors and/or Reorganized Debtors pursuant to, or in connection with, the Post-Effective Date Credit Agreement (i) are legal, valid and enforceable, and (ii) do not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any federal or state law.

50.    <u>Miscellaneous</u>. Notwithstanding anything to the contrary in the Plan, the Plan Exhibits, or this Order, (i) NMHG Financial Services, Inc. ("NMHG") is the holder and lessor pursuant to (a) Lease No. 4105170, and all

related schedules, as between BMG Equipment Company, Inc. ("BMG"), as subsequently assigned to NMHG, and Haynes, (b) Lease No. 4114128, and all related schedules, between BMG, as subsequently assigned to NMHG, and Haynes, and (c) Lease No. 4133013, and all related schedules, between Tynan Equipment Co., as subsequently assigned to NMHG, and Haynes (all collectively referred to as the "Leases"); (ii) the Leases shall be assumed on the Effective Date in accordance with Section 365 of the Bankruptcy Code and Article VIII of the Plan; and Haynes' Schedule G, be and hereby is, deemed amended to reflect NMHG as lessor under the Leases.

51.    <u>Modifications To The Original Plan</u>.  At the request of the Debtors, the Original Plan is hereby modified pursuant to section 1127 Bankruptcy Code as follows:[6]

(a)    ~~**1.53    *Exchange Act* means the Securities Exchange Act of 1934, as now in effect or hereafter amended.**~~

(b)    ~~**1.64    *Haynes UK Credit Agreement* means that certain Facility Agreement dated April 2, 2004, entered into between Haynes International, Ltd., a non-debtor subsidiary of Haynes organized under the laws of England and Wales ("Haynes UK"), and Burdale Financial Limited, an affiliate of Congress ("UK Lender").**~~

(c)    ~~**1.65    *Haynes UK Credit Facility* means the secured financing facility provided to Haynes UK by the UK Lender pursuant to the Haynes UK Credit Agreement and agreements related thereto as authorized by the Bankruptcy Court pursuant to the Postpetition Facility Order.**~~

---

[6]    Additions are indicated with a double underlining; deletions are indicated with a strike-through.

(d)   ~~**1.94   *Post-Effective Date Haynes UK Credit Agreement*** means the Haynes UK Credit Agreement, as amended and restated.~~

(e)   ~~**1.95   *Post-Effective Date Haynes UK Credit Agreement*** means the Haynes UK Credit Agreement, as amended and restated.~~

(f)   **1.111   *Released Parties*** means, collectively, (i) all officers of each of the Debtors, all members of the boards of directors of each of the Debtors, and all employees of each of the Debtors, in each case, as of the date of commencement of the hearing on confirmation of the Plan, (ii) the Creditors Committee and all members of the Creditors Committee in their respective capacities as such, (iii) the Ad Hoc Noteholders Committee and all members of the Ad Hoc Noteholders ~~Committee~~Committee in their capacities as such, (iv) the Postpetition Agent in its capacity as such, (v) the Postpetition Lenders in their capacities as such, (vi) the Senior Notes Trustee in its capacity as such, (vii) Blackstone, (viii) all Professionals, and (ix) with respect to each of the above-named Persons, such Person's affiliates, principals, employees, agents, officers, directors, financial advisors, attorneys and other professionals, in their capacities as such.

(g)   **~~1.130~~1.125   *Voting Deadline*** means the voting deadline date for voting to accept or reject this Plan, as determined by the Bankruptcy Court and set forth in the Solicitation Order.

(h)   ~~**1.131   *Voting Record Date*** means the voting record date for voting to accept or reject this Plan, as determined by the Bankruptcy Court.~~

Dated: Indianapolis, Indiana
    August 16, 2004


_____
Honorable Anthony J. Metz, III
United States Bankruptcy Judge

John Wm. Butler, Jr. (ARDC No. 06209373)
J. Eric Ivester (ARDC No. 06215581)
Kristin E. Rooney (ARDC No. 06256593)
SKADDEN ARPS SLATE MEAGHER
    & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606-1285
Telephone: (312) 407-0700
Facsimile: (312) 407-0411

        - and -

Jeffrey A. Hokanson
Ben T. Caughey
ICE MILLER
One American Square
Box 82001
Indianapolis, Indiana 46282-0002
Telephone: (317) 236-2100
Facsimile: (317) 236-2219

ATTORNEYS FOR
HAYNES INTERNATIONAL, INC., et al.

461161-Chicago S2A                54

Exhibit 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - x
                      :

In re:                  :      Chapter 11

HAYNES INTERNATIONAL, INC., et al. :

                    :      Case No. 04-05364 (AJM)

Debtors.        :      Jointly Administered

- - - - - - - - - - - - - - - - - - - - - - - - - - x

## FIRST AMENDED JOINT PLAN OF REORGANIZATION
## OF HAYNES INTERNATIONAL, INC. AND ITS AFFILIATED
## DEBTORS AND DEBTORS-IN-POSSESSION

John Wm. Butler, Jr. (IL ARDC No. 06209373)
J. Eric Ivester (IL ARDC No. 06215581)
Kristin E. Rooney (IL ARDC No. 06256593)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
333 West Wacker Drive
Chicago, Illinois  60606-1285
Telephone:  (312) 407-0700

Jeffrey A. Hokanson
Ben T. Caughey
ICE MILLER
One American Square
Box 82001
Indianapolis, Indiana 46282-0002
Telephone:  (317) 236-2100

Attorneys for Debtors and
Debtors-in-Possession

Dated: Indianapolis, Indiana
       June 29, 2004

## TABLE OF CONTENTS

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

ARTICLE I

DEFINED TERMS AND RULES OF INTERPRETATION . . . . . . . . . . . . . . . . . . . . . . -2-
A.  Scope of Definitions; Rules of Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
B.  Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
     1.1    *503 Deadline* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-
     1.2    *Ad Hoc Noteholders Committee* . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
     1.3    *Administrative Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
     1.4    *Affiliate Debtors* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
     1.5    *Affiliates* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
     1.6    *Allowed* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
     1.7    *Allowed Claim* or *Allowed Interest* . . . . . . . . . . . . . . . . . . . . . . . -3-
     1.8    *Avoidance Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
     1.9    *Ballot* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
     1.10  *Bankruptcy Code* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
     1.11  *Bankruptcy Court* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
     1.12  *Bankruptcy Rules* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
     1.13  *Bar Date* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
     1.14  *Bar Date Order* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
     1.15  *Blackstone* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
     1.16  *Business Day* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
     1.17  *Cash* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
     1.18  *Cash Collateral Order* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
     1.19  *Causes of Action* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
     1.20  *Certificate* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
     1.21  *Certificates of Incorporation and Bylaws* . . . . . . . . . . . . . . . . . . . -5-
     1.22  *Chapter 11 Cases* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
     1.23  *Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
     1.24  *Claimholder* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
     1.25  *Claims Agent* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
     1.26  *Claims/Interests Objection Deadline* . . . . . . . . . . . . . . . . . . . . . . -6-
     1.27  *Class* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

i

| 1.28 | *Class 7 Notice* | -6- |
|------|------------------|-----|
| 1.29 | *Collective Bargaining Agreement* | -6- |
| 1.30 | *Commitment Letter* | -6- |
| 1.31 | *Confirmation Date* | -6- |
| 1.32 | *Confirmation Hearing* | -6- |
| 1.33 | *Confirmation Order* | -6- |
| 1.34 | *Congress* | -6- |
| 1.35 | *Continuing Indemnification Rights* | -6- |
| 1.36 | *Creditors Committee* | -7- |
| 1.37 | *Cure* | -7- |
| 1.38 | *Cure Claim* | -7- |
| 1.39 | *Cure Claim Objection Deadline* | -7- |
| 1.40 | *Cure Claim Submission Deadline* | -7- |
| 1.41 | *D&O Insurance* | -7- |
| 1.42 | *Debtor* or *Debtors* | -7- |
| 1.43 | *Disallowed Claim* | -7- |
| 1.44 | *Disallowed Interest* | -8- |
| 1.45 | *Disbursing Agent* | -8- |
| 1.46 | *Disclosure Statement* | -8- |
| 1.47 | *Disputed Claim* | -8- |
| 1.48 | *Disputed Interest* | -8- |
| 1.49 | *Distribution Date* | -8- |
| 1.50 | *Distribution Reserve* | -9- |
| 1.51 | *Effective Date* | -9- |
| 1.52 | *Estates* | -9- |
| 1.53 | *Exchange Act* | -9- |
| 1.54 | *Exhibit* | -9- |
| 1.55 | *Exhibit Filing Date* | -9- |
| 1.56 | *Existing Securities* | -9- |
| 1.57 | *File, Filed* or *Filing* | -9- |
| 1.58 | *Final Order* | -9- |
| 1.59 | *General Unsecured Claim* | -9- |
| 1.60 | *Haynes* | -10- |
| 1.61 | *Haynes Holdings* | -10- |
| 1.62 | *Haynes Sour Gas* | -10- |
| 1.63 | *Haynes Specialty Steels* | -10- |
| 1.64 | *Haynes UK Credit Agreement* | -10- |
| 1.65 | *Haynes UK Credit Facility* | -10- |

| 1.66 | *Holdback Amount* | -10- |
|------|------------------|------|
| 1.67 | *Holdback Escrow Account* | -10- |
| 1.68 | *Impaired* | -10- |
| 1.69 | *Indemnification Rights* | -10- |
| 1.70 | *Indemnitee* | -11- |
| 1.71 | *Indenture* | -11- |
| 1.72 | *Insurance Coverage* | -11- |
| 1.73 | *Insured Workers' Compensation Programs* | -11- |
| 1.74 | *Intercompany Claim* | -11- |
| 1.75 | *Interestholder* | -11- |
| 1.76 | *Interests* | -11- |
| 1.77 | *Long-Term Incentive Plan* | -11- |
| 1.78 | *Master Ballot* | -11- |
| 1.79 | *New Board of Reorganized Haynes* | -11- |
| 1.80 | *New Common Stock* | -12- |
| 1.81 | *New Preferred Stock* | -12- |
| 1.82 | *Old Common Stock Interests* | -12- |
| 1.83 | *Old Common Stockholder Shares* | -12- |
| 1.84 | *Other Old Equity Interests* | -12- |
| 1.85 | *Other Priority Claim* | -12- |
| 1.86 | *PBGC* | -12- |
| 1.87 | *Pension Plan* | -12- |
| 1.88 | *Periodic Distribution Date* | -12- |
| 1.89 | *Person* | -12- |
| 1.90 | *Petition Date* | -13- |
| 1.91 | *Plan* | -13- |
| 1.92 | *Post-Effective Date Credit Agreement* | -13- |
| 1.93 | *Post-Effective Date Facility* | -13- |
| 1.94 | *Post-Effective Date Haynes UK Credit Agreement* | -13- |
| 1.95 | *Post-Effective Date Haynes UK Credit Facility* | -13- |
| 1.96 | *Post-Effective Date Lenders* | -13- |
| 1.97 | *Postpetition Agent* | -13- |
| 1.98 | *Postpetition Credit Agreement* | -13- |
| 1.99 | *Postpetition Facility* | -13- |
| 1.100 | *Postpetition Facility Claim* | -14- |
| 1.101 | *Postpetition Facility Order* | -14- |
| 1.102 | *Postpetition Interest* | -14- |
| 1.103 | *Postpetition Lenders* | -14- |

iii

1.104   *Priority Tax Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
1.105   *Pro Rata* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
1.106   *Professional* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-
1.107   *Professional Fee Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
1.108   *Professional Fee Order* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
1.109   *Registration Rights Agreement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
1.110   *Reinstated* or *Reinstatement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
1.111   *Released Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
1.112   *Reorganized* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
1.113   *Reorganized Debtors* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
1.114   *Restructuring Transaction(s)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
1.115   *Retained Actions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
1.116   *Retained Avoidance Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
1.117   *Retiree Medical Programs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
1.118   *Schedules* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
1.119   *Secured Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
1.120   *Securities Act* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
1.121   *Senior Noteholder* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
1.122   *Senior Noteholder Shares* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
1.123   *Senior Note Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
1.124   *Senior Notes* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
1.125   *Senior Notes Trustee* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
1.126   *Servicer* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
1.127   *Solicitation Order* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
1.128   *Tentative Agreement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
1.129   *Unimpaired Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
1.130   *Voting Deadline* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
1.131   *Voting Record Date* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
C.   Rules of Interpretation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
D.   Computation of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
E.   References to Monetary Figures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
F.   Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
G.   Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

iv

ARTICLE II

ADMINISTRATIVE EXPENSES
AND PRIORITY TAX CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
2.1    *Administrative Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-
2.2    *Priority Tax Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

ARTICLE III

CLASSIFICATION OF CLAIMS AND INTERESTS . . . . . . . . . . . . . . . . . . . . . . . -20-
3.1    *Class 1* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-
3.2    *Class 2* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-
3.3    *Class 3* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-
3.4    *Class 4* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-
3.5    *Class 5* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-
3.6    *Class 6* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-
3.7    *Class 7* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

ARTICLE IV

IDENTIFICATION OF CLASSES OF CLAIMS
AND INTERESTS IMPAIRED AND UNIMPAIRED BY THE PLAN . . . . . . . . . . . . . -21-
4.1    *Unimpaired Classes of Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . -21-
4.2    *Impaired Classes of Claims and Interests* . . . . . . . . . . . . . . . . . . . . -21-

ARTICLE V

PROVISIONS FOR TREATMENT
OF CLAIMS AND INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
5.1    *Class 1: Secured Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
5.2    *Class 2: Other Priority Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
5.3    *Class 3: General Unsecured Claims* . . . . . . . . . . . . . . . . . . . . . . . . -23-
5.4    *Class 4: Senior Note Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
5.5    *Class 5: Intercompany Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
5.6    *Class 6: Old Common Stock Interests* . . . . . . . . . . . . . . . . . . . . . . . -24-
5.7    *Class 7: Other Old Equity Interests* . . . . . . . . . . . . . . . . . . . . . . . . -24-
5.8    *Reservation of Rights* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-

v

ARTICLE VI

ACCEPTANCE OR REJECTION OF THE PLAN;
EFFECT OF REJECTION BY ONE OR MORE
IMPAIRED CLASSES OF CLAIMS OR INTERESTS ........................... -24-
    6.1    *Impaired Classes Entitled to Vote* ............................... -24-
    6.2    *Acceptance by Impaired Classes* ............................... -25-
    6.3    *Classes Deemed to Accept the Plan* ............................ -25-
    6.4    *Classes Deemed to Reject Plan* ................................ -25-
    6.5    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code* ..... -25-
    6.6    *Confirmability and Severability of a Plan* ........................ -25-

ARTICLE VII

MEANS FOR IMPLEMENTATION OF THE PLAN .......................... -26-
    7.1    *Continued Corporate Existence* ................................ -26-
    7.2    *Substantive Consolidation* .................................... -26-
    7.3    *Restructuring Transactions* ................................... -26-
    7.4    *Corporate Action* ........................................... -27-
    7.5    *Certificates of Incorporation and Bylaws* ....................... -27-
    7.6    *Cancellation of Existing Securities and Agreements* ................. -28-
    7.7    *Reinstatement of Common Stock of Affiliate Debtors* ............... -29-
    7.8    *Directors and Officers* ....................................... -29-
    7.9    *Pension Plan and Retiree Medical Programs* ...................... -30-
    7.10  *Employment, Indemnification and Other Agreements* ................ -30-
    7.11  *Continuation of Insured Workers' Compensation Programs* .......... -31-
    7.12  *Implementation of the Long-Term Incentive Program* .............. -32-
    7.13  *Issuance of New Common Stock* ............................... -32-
    7.14  *Post-Effective Date Financing* ................................. -33-
    7.15  *Preservation of Causes of Action* .............................. -33-
    7.16  *Effectuating Documents and Further Transactions* ................. -33-
    7.17  *Exemption from Transfer Taxes and Recording Fees* ............... -34-

ARTICLE VIII

TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES ........................................... -34-

8.1    *Assumed Contracts and Leases* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -34-
8.2    *Rejected Contracts and Leases* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -35-
8.3    *Payments Related to Assumption of Executory Contracts and*
       *Unexpired Leases* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -35-
8.4    *Rejection Damages Bar Date* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-
8.5    *Collective Bargaining Agreement; Tentative Agreement* . . . . . . . . . . . . . -36-
8.6    *Preservation of Insurance* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-

ARTICLE IX

PROVISIONS GOVERNING DISTRIBUTIONS;
PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT
AND UNLIQUIDATED CLAIMS AND INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . -36-
9.1    *Time of Distributions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-
9.2    *No Interest on Claims or Interests* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-
9.3    *Disbursing Agent* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -37-
9.4    *Surrender of Securities or Instruments* . . . . . . . . . . . . . . . . . . . . . . . . . . -37-
9.5    *Instructions to Disbursing Agent* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -37-
9.6    *Services of Indenture Trustees, Agents and Servicers* . . . . . . . . . . . . . . . -38-
9.7    *Claims Administration Responsibility* . . . . . . . . . . . . . . . . . . . . . . . . . . . . -38-
9.8    *Delivery of Distributions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -38-
9.9    *Procedures for Treating and Resolving Disputed and Contingent*
       *Claims and Interests* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -39-
9.10   *Fractional Securities; Fractional Dollars* . . . . . . . . . . . . . . . . . . . . . . . . . -40-
9.11   *Means of Cash Payment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -40-
9.12   *Withholding and Reporting Requirements* . . . . . . . . . . . . . . . . . . . . . . . . -41-
9.13   *Objection Deadline; Prosecution of Objections* . . . . . . . . . . . . . . . . . . . . -41-

ARTICLE X

ALLOWANCE AND PAYMENT OF
CERTAIN ADMINISTRATIVE CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -41-
10.1   *Postpetition Facility Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -41-
10.2   *Professional Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -42-
10.3   *Substantial Contribution Compensation and Expenses Bar Date* . . . . . . . -43-
10.4   *Other Administrative Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -43-

vii

ARTICLE XI

EFFECT OF THE PLAN ON CLAIMS AND INTERESTS . . . . . . . . . . . . . . . . . . . . . . . -43-
    11.1   *Revesting of Assets* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -43-
    11.2   *Discharge of Debtors* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -44-
    11.3   *Compromises and Settlements* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -44-
    11.4   *Release by Debtors of Certain Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . -44-
    11.5   *Release by Holders of Claims and Interests* . . . . . . . . . . . . . . . . . . . . . -45-
    11.6   *Setoffs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -45-
    11.7   *Exculpation and Limitation of Liability* . . . . . . . . . . . . . . . . . . . . . . . . -45-
    11.8   *Indemnification Obligations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -46-
    11.9   *Injunction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -46-
    11.10  *Waiver of Distributions by Non-Employee Holders of Old*
             *Common Stock Interests and Their Affiliates* . . . . . . . . . . . . . . . . . . . . . . . -46-

ARTICLE XII

CONDITIONS PRECEDENT TO
CONFIRMATION AND CONSUMMATION OF THE PLAN . . . . . . . . . . . . . . . . . . . -47-
    12.1   *Conditions to Confirmation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -47-
    12.2   *Conditions to Consummation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -47-
    12.3   *Waiver of Conditions to Confirmation or Consummation* . . . . . . . . . . . . -49-

ARTICLE XIII

RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -50-

ARTICLE XIV

MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -52-
    14.1   *Binding Effect* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -52-
    14.2   *Modification and Amendments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -52-
    14.3   *Allocation of Plan Distributions Between Principal and Interest* . . . . . . . -52-
    14.4   *Committees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -52-
    14.5   *Revocation, Withdrawal, or Non-Consummation* . . . . . . . . . . . . . . . . . . -53-
    14.6   *Severability of Plan Provisions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -53-
    14.7   *Notices* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -53-
    14.8   *Term of Injunctions or Stays* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -55-

14.9    *Governing Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -55-
14.10   *No Waiver or Estoppel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -55-
14.11   *Conflicts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -56-

Exhibits

| | |
|---|---|
| Plan Exhibit A | Retained Actions and Retained Avoidance Claims |
| Plan Exhibit B | Form of Certificate of Incorporation of Reorganized Debtors |
| Plan Exhibit C | Form of Bylaws of Reorganized Debtors |
| Plan Exhibit D | Description of Long-Term Incentive Plan; Employment Agreements and/or Severance Agreements as Modified of Certain Executives and Sr. Mgmt. |
| Plan Exhibit E | Form of Registration Rights Agreement |
| Plan Exhibit F | Post-Effective Date Credit Agreement |
| Plan Exhibit G | Rejected Contracts and Leases |

## INTRODUCTION

Haynes International, Inc. ("Haynes") and certain of its subsidiaries and affiliates, as debtors and debtors-in-possession in the above-captioned jointly administered Chapter 11 Cases (collectively, the "Debtors"), hereby propose the following Joint Plan of Reorganization (the "Plan") for the resolution of the outstanding Claims against and Interests in the Debtors. Reference is made to the Disclosure Statement with Respect to the Joint Plan of Reorganization of Haynes International, Inc. and its Affiliated Debtors and Debtors-in-Possession (the "Disclosure Statement"), distributed contemporaneously herewith, for a discussion of the Debtors' history, business, properties and operations, projections for those operations, risk factors, a summary and analysis of the Plan, and certain related matters including, among other things, the securities to be issued under the Plan. Capitalized terms used herein shall have the meanings ascribed to such terms in Article I of the Plan. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The direct and indirect subsidiaries incorporated outside of the United States have not commenced cases under Chapter 11 of the Bankruptcy Code. These subsidiaries continue to operate their businesses outside of bankruptcy.

This Plan contemplates the reorganization of the Debtors and the resolution of the outstanding Claims against and Interests in the Debtors pursuant to sections 1121(a) and 1123 of the Bankruptcy Code. For the purposes of voting and distributions, the Debtors have assumed that General Unsecured Claims are Impaired. Claimholders asserting General Unsecured Claims will receive Cash in an amount equal to one hundred percent (100%) of the Allowed Amount of such claims. Claimholders with respect to Senior Note Claims will receive New Common Stock on account of their Claims. Senior Note Claims are deemed Allowed Claims under the Plan. Holders of Old Common Stock Interests will receive a distribution of New Common Stock under the Plan. The distributions to be made to the claimants in each of the Classes of creditor claims and equity interests are set forth in Article V herein.

These reorganization cases have been consolidated for procedural purposes and are being jointly administered pursuant to an order of the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division. This Plan provides for the substantive consolidation of Haynes Holdings, Inc., Haynes, Haynes Specialty Steels Company and Haynes Sour Gas Tubulars, Inc. for all Plan purposes, including for voting and distribution purposes. This Plan is deemed a motion for substantive consolidation to the extent necessary.

The Plan also provides that Haynes Holdings, Inc. will be merged into Haynes at the Effective Date of the Plan to create Reorganized Haynes.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan may not be solicited from a Claimholder or Interestholder until the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Claimholders and Interestholders. In this case, the Disclosure Statement was approved by the Bankruptcy Court by order entered on June 28, 2004, and has been distributed simultaneously with this Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, a discussion of the Debtors' history, business, properties and operations, projections for those operations, risk factors associated with the business and Plan, a summary and analysis of this Plan, and certain related matters including, among other things, the securities to be issued under this Plan. ALL CLAIMHOLDERS AND INTERESTHOLDERS THAT ARE ELIGIBLE TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and Article XIV of this Plan, the Debtors expressly reserve their right to alter, amend or modify this Plan, one or more times, before the Plan's substantial consummation; provided, however, that modification to the Plan that materially effects certain Classes of Claims will only be made with the consent of the Creditors Committee.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Scope of Definitions; Rules of Construction

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

### B.    Definitions

1.1    *503 Deadline* shall have the meaning ascribed to it in Section 10.3 hereof.

-2-

**1.2** *Ad Hoc Noteholders Committee* means the ad hoc committee formed by ceratin holders of the Senior Notes, which such committee disbanded on April 6, 2004.

**1.3** *Administrative Claim* means a Claim for costs and expenses of administration of the Chapter 11 Cases Allowed under section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtors' Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or prior to the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses Allowed by the Bankruptcy Court under section 328, 330, 331 and/or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; and (c) all fees and charges assessed against the Estates under section 1930, Chapter 123 of Title 28, United States Code, and all Allowed Claims (including reclamation claims) that are entitled to be treated as Administrative Claims pursuant to Final Order of the Bankruptcy Court under 546(c)(2)(A).

**1.4** *Affiliate Debtors* means all of the Debtors other than Haynes.

**1.5** *Affiliates* shall have the meaning ascribed to such term by section 101(2) of the Bankruptcy Code.

**1.6** *Allowed* means, when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest of the type described in such Class.

**1.7** *Allowed Claim* or *Allowed Interest* means a Claim or any portion thereof, or an Interest or any portion thereof, (a) that has been allowed by a Final Order of the Bankruptcy Court (or such other court as the Reorganized Debtors and the holder of such Claim or Interest agrees may adjudicate such Claim or Interest and objections thereto), or (b) as to which, on or by the Effective Date, (i) no proof of claim or interest has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled (other than a Claim or Interest that is Scheduled at zero, in an unknown amount, or as disputed), or (c) for which a proof of claim or interest in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, withdrawn, or denied by a Final Order, or (d) that is expressly allowed in a liquidated

-3-

amount in this Plan (regardless whether such Claim or Interest is Scheduled and whether or not a proof of claim is filed in respect thereof).

  **1.8**  *Avoidance Claims* means Causes of Action against Persons arising under any of sections 502, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Avoidance Claims, but excluding any and all Claims released under the Plan.   A nonexclusive list of the Retained Actions and Retained Avoidance Claims is attached hereto as <u>Exhibit A</u>.

  **1.9**  *Ballot* means each of the ballot forms that are distributed with the Disclosure Statement to Claimholders and Interestholders included in Classes that are Impaired under this Plan and entitled to vote to accept or reject the Plan on which the holder is to indicate acceptance or rejection of this Plan.

  **1.10**  *Bankruptcy Code* means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as in effect on the date hereof.

  **1.11**  *Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division or such other court as may have jurisdiction over the Chapter 11 Cases.

  **1.12**  *Bankruptcy Rules* means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

  **1.13**  *Bar Date* means the deadline established by the Bankruptcy Court pursuant to the Bar Date Order or other Final Order for filing all proofs of Claim or Interest in the Chapter 11 Cases, including Claims of governmental units in accordance with section 502(b)(9) of the Bankruptcy Code.

  **1.14**  *Bar Date Order* means that order entered by the Bankruptcy Court on April 22, 2004, which, among other things, established the Bar Date for prepetition Claims and Interests as June 3, 2004.

  **1.15**  *Blackstone* means The  Blackstone Group L.P. and its affiliates.

-4-

**1.16**    *Business Day* means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.17**    *Cash* means legal tender of the United States of America and equivalents thereof.

**1.18**    *Cash Collateral Order* means together, (a) the Interim Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §§ 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) entered by the Bankruptcy Court on March 29, 2004, and (b) the Final Order with respect thereto entered by the Bankruptcy Court on April 22, 2004.

**1.19**    *Causes of Action* means any and all actions, proceedings, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

**1.20**    *Certificate* shall have the meaning ascribed to it in Section 9.4 hereof.

**1.21**    *Certificates of Incorporation and Bylaws* means the Certificates of Incorporation and Bylaws (or other similar documents) of the Reorganized Debtors in substantially the forms attached hereto as Exhibit B and Exhibit C, respectively.

**1.22**    *Chapter 11 Cases* means the cases under Chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

**1.23**    *Claim* means a "claim" against the Debtors (or any of them), whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.24**    *Claimholder* means a holder of a Claim.

**1.25**    *Claims Agent* means Kurtzman Carson Consultants LLC, 12910 Culver Boulevard, Suite I, Los Angeles, CA 90066, the Claims, Noticing and Balloting Agent as approved by the Bankruptcy Court on April 22, 2004.

1.26    *Claims/Interests Objection Deadline* means the first Business Day which is 120 days after the Effective Date as the same may be from time to time extended by the Bankruptcy Court without further notice to parties in interest.

1.27    *Class* means a category of Claimholders or Interestholders, as described in Article III of this Plan.

1.28    *Class 7 Notice* means the notice to members of Class 7 Other Old Equity Interests, after a Final Order of the Bankruptcy Court or other Court of competent jurisdiction, providing that Class 7 Other Old Equity Interests is deemed to have rejected the Plan and members of such Class are not entitled to vote on the Plan.

1.29    *Collective Bargaining Agreement* means that certain Collective Bargaining Agreement with the United Steelworkers of America, which was ratified on July 2, 2002, and which expires on June 11, 2005, as modified by the Tentative Agreement.

1.30    *Commitment Letter* means that certain Commitment Letter dated March 26, 2004 among the Debtors and Congress pursuant to which Congress committed to provide the Debtors with (i) the Postpetition Facility and (ii) the Post-Effective Date Facility.

1.31    *Confirmation Date* means the date of entry of the Confirmation Order.

1.32    *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.33    *Confirmation Order* means the order of the Bankruptcy Court confirming this Plan in accordance with its terms pursuant to section 1129 of the Bankruptcy Code.

1.34    *Congress* means Congress Financial Corporation (Central).

1.35    *Continuing Indemnification Rights* means those Indemnification Rights held by any Indemnitee who is a Released Party and serves as a director, officer or employee (or in any similar capacity) of the Reorganized Debtors immediately following the occurrence of the Effective Date together with any Indemnification Rights held by any Indemnitee on account of events occurring on or after the Petition Date.

-6-

**1.36** *Creditors Committee* means the statutory committee appointed in these cases by the Office of the United States Trustee on or about April 2, 2004, as reconstituted from time to time.

**1.37** *Cure* means the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption (or assumption and assignment) of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**1.38** *Cure Claim* shall have the meaning ascribed to it in Section 8.3 hereof.

**1.39** *Cure Claim Objection Deadline* shall have the meaning ascribed to it in Section 8.3 hereof.

**1.40** *Cure Claim Submission Deadline* shall have the meaning ascribed to it in Section 8.3 hereof.

**1.41** *D&O Insurance* means insurance maintained by the Debtors which, among others, covers the Debtors' directors and officers.

**1.42** *Debtor* or *Debtors* means, individually, any of Haynes or the Affiliate Debtors and, collectively, all of Haynes and the Affiliate Debtors in the above-captioned jointly administered Chapter 11 Cases.

**1.43** *Disallowed Claim* means a Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) is not Scheduled and as to which a proof of claim bar date has been set but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.44    ***Disallowed Interest*** means an Interest or any portion thereof that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which a proof of interest bar date has been established but no proof of interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) is not Scheduled and as to which a proof of interest bar date has been set but no proof of interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.45    ***Disbursing Agent*** means the Reorganized Debtors, or any party designated by the Reorganized Debtors, to serve as disbursing agent under the Plan.

1.46    ***Disclosure Statement*** means the written disclosure statement that relates to the Plan, as amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with section 1125 of the Bankruptcy Code and Bankruptcy Rule 3018.

1.47    ***Disputed Claim*** means a Claim or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim and includes, without limitation, Claims that (a) (i) have not been Scheduled by the Debtors or have been Scheduled at zero, as unknown or as contingent, unliquidated, or disputed and (ii) are not the subject of an objection in the Bankruptcy Court, (b) are the subject of a proof of claim that differs in nature, amount or priority from the Schedules, or (c) are the subject of an objection filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

1.48    ***Disputed Interest*** means an Interest or any portion thereof, that is neither an Allowed Interest nor a Disallowed Interest and includes, without limitation, Interests that (a) (i) have not been Scheduled by the Debtors or have been Scheduled at zero, as unknown or as contingent, unliquidated, or disputed and (ii) are not the subject of an objection in the Bankruptcy Court, (b) are the subject of a proof of interest that differs in nature, amount or priority from the Schedules, or (c) are the subject of an objection filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

1.49    ***Distribution Date*** means, except with respect to Claims Reinstated under the Plan, as to which all distributions shall be timely made in accordance with the terms thereof, the Effective Date or as soon thereafter as is reasonably practicable.

-8-

     **1.50**    *Distribution Reserve* means the shares of New Common Stock for distribution on account of Allowed Class 6 Old Common Stock Interests to be reserved pending allowance of Disputed Interests in accordance with Section 9.9(b) of the Plan.

     **1.51**    *Effective Date* means the Business Day determined by the Debtors on which all conditions to the consummation of the Plan set forth in Section 12.2 hereof have been either satisfied or waived as provided in Section 12.3 hereof and is the day upon which this Plan is substantially consummated.

     **1.52**    *Estates* means the bankruptcy estates of the Debtors created under section 541 of the Bankruptcy Code.

     **1.53**    *Exhibit* means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement.

     **1.54**    *Exhibit Filing Date* means the date on which Exhibits to the Plan shall be filed with the Bankruptcy Court, which date shall be at least seven (7) days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court without further notice.

     **1.55**    *Existing Securities* means, collectively, the Senior Notes, the Old Common Stock Interests, the Other Old Equity Interests, and all options, warrants and rights (whether fixed or contingent, matured or unmatured, disputed or undisputed), contractual, legal, equitable or otherwise, to acquire any of the foregoing.

     **1.56**    *File, Filed* or *Filing* means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

     **1.57**    *Final Order* means an order or judgment, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

     **1.58**    *General Unsecured Claim* means a Claim that is not an Administrative Claim, Priority Tax Claim, Secured Claim, Other Priority Claim, Senior Note Claim, Intercompany Claim, or a claim of an employee or former employee of the Debtors that is not being affected by this Plan as contemplated in <u>Article VII</u> of this Plan.

     **1.59**    *Haynes* means Haynes International, Inc., a Delaware corporation.

-9-

**1.60**    *Haynes Holdings* means Haynes Holdings, Inc., a Delaware corporation.

**1.61**    *Haynes Sour Gas* means Haynes Sour Gas Tubulars, Inc., a Delaware corporation.

**1.62**    *Haynes Specialty Steels* means Haynes Specialty Steels Company, a Delaware corporation.

**1.63**    *Holdback Amount*  means the amount equal to 20% of fees billed to the Debtors in a given month that was retained by the Debtors as a holdback on payment of Professional Fee Claims pursuant to the Professional Fee Order.  The Holdback Amount shall not be considered property of the Debtors, the Reorganized Debtors, or the Estates.

**1.64**    *Holdback Escrow Account* means the escrow account established by the Disbursing Agent into which Cash equal to the Holdback Amount shall be deposited on the Effective Date for the payment of Allowed Holdback Amounts to the extent not previously paid or Disallowed.

**1.65**    *Impaired* means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.66**    *Indemnification Rights* means any obligations or rights of the Debtors to indemnify, reimburse, advance or contribute to the losses, liabilities or expenses of an Indemnitee pursuant to the Debtors' certificates of incorporation, bylaws, or policy of providing employee indemnification, or other applicable law or specific agreement in respect of any claims, demands, suits, causes of action or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for or on behalf of the Debtors.

**1.67**    *Indemnitee* means all present and former directors, officers, employees, agents or representatives of the Debtors who are entitled to assert Indemnification Rights.

**1.68**    *Indenture* means the Indenture dated as of August 23, 1996, between Haynes, as issuer, and the Senior Notes Trustee, as trustee, relating to the Senior Notes, as amended from time to time.

**1.69**    *Insurance Coverage* shall have the meaning ascribed to it in Section 11.8 hereof.

-10-

1.70    *Insured Workers' Compensation Programs* means, collectively, the Debtors' workers' compensation programs in all states in which they operate pursuant to which the Debtors provide their employees with workers' compensation coverage for claims arising from or related to their employment with the Debtors.

1.71    *Intercompany Claim* means a Claim by a Debtor against another Debtor.

1.72    *Interestholder* means a holder of an Interest.

1.73    *Interests* means (a) the legal, equitable, contractual and other rights (whether fixed or contingent, matured or unmatured, disputed or undisputed) of any Person with respect to the Old Common Stock Interests and any equity securities of the Debtors and (b) the legal, equitable, contractual or other rights of any Person to acquire or receive any of the foregoing.

1.74    *Long-Term Incentive Plan* means that certain plan by which the Reorganized Debtors shall deliver certain stock options and stock appreciation rights to certain members of management and other employees on or after the Effective Date, all as is more specifically described on Exhibit D hereto.

1.75    *Master Ballot* means the ballot distributed to nominees or holders of record of the Senior Notes and Old Common Stock Interests to record the votes, if any, of the beneficial holders of such instruments.

1.76    *New Board of Reorganized Haynes* shall have the meaning ascribed to it in Section 7.8(b) hereof.

1.77    *New Common Stock* means the shares of new common stock of Reorganized Haynes, par value $.01, authorized under the Certificate of Incorporation of Reorganized Haynes.

1.78    *New Preferred Stock* shall have the meaning ascribed to it in Section 7.5 hereof.

1.79    *Old Common Stock Interests* means that certain common stock, par value $.01, authorized by Haynes Holdings prior to the Petition Date.

1.80    *Old Common Stockholder Shares* means 400,000 shares of New Common Stock.

-11-

**1.81**    *Other Old Equity Interests* means all options, warrants, call rights, puts, awards, or other agreements to acquire (a) Old Common Stock Interests or (b) any equity securities of the Debtors outstanding immediately prior to the Petition Date.

**1.82**    *Other Priority Claim* means a Claim, other than an Administrative Claim or Priority Tax Claim, that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

**1.83**    *PBGC* shall mean the Pension Benefit Guaranty Corporation, a wholly-owned United States government corporation that administers the defined benefit pension plan termination insurance program under Title IV of ERISA.

**1.84**    *Pension Plan* shall mean the Haynes International, Inc. Pension Plan, a defined benefit pension plan covered by Title IV of ERISA that Haynes sponsors.

**1.85**    *Periodic Distribution Date* means (a) the Distribution Date, as to the first distribution made by the Reorganized Debtors, and (b) thereafter, (i) the first Business Day occurring one hundred twenty (120) days after the Distribution Date and (ii) subsequently, the first Business Day occurring one hundred twenty (120) days after the immediately preceding Periodic Distribution Date.

**1.86**    *Person* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other entity.

**1.87**    *Petition Date* means March 29, 2004, the date on which the Debtors filed their petitions for relief commencing these Chapter 11 Cases.

**1.88**    *Plan* means this joint Chapter 11 plan of reorganization for the resolution of outstanding Claims and Interests in the Chapter 11 Cases, as herein proposed by the Debtors, including all supplements, appendices and schedules thereto, either in its present form or as the same may be altered, amended or modified from time to time.

**1.89**    *Post-Effective Date Credit Agreement* means the Postpetition Credit Agreement, as amended and restated or otherwise replaced, from and after the Effective Date.

**1.90** *Post-Effective Date Facility* means the financing facility provided to the Reorganized Debtors by the Post-Effective Date Lenders pursuant to the Post-Effective Date Credit Agreement and agreements related thereto.

**1.91** *Post-Effective Date Lenders* means the lenders from time to time party to the Post-Effective Date Credit Agreement.

**1.92** *Postpetition Agent* means the administrative agent for the Postpetition Lenders under the Postpetition Credit Agreement.

**1.93** *Postpetition Credit Agreement* means that Loan and Security Agreement, dated as of April 12, 2004, as amended from time to time thereafter, among Haynes, as borrower, Haynes Holdings, as guarantor, the Postpetition Agent and the Postpetition Lenders, which was executed by the Debtors in connection with the Postpetition Facility.

**1.94** *Postpetition Facility* means the debtor-in-possession secured financing facility provided to the Debtors by the Postpetition Lenders pursuant to the Postpetition Credit Agreement and agreements related thereto as authorized by the Bankruptcy Court pursuant to the Postpetition Facility Order.

**1.95** *Postpetition Facility Claim* means all superpriority administrative claims of the Postpetition Agent and the Postpetition Lenders arising under or pursuant to the Postpetition Facility.

**1.96** *Postpetition Facility Order* means, collectively, the interim order that was entered by the Bankruptcy Court on March 29, 2004, the final order that was entered by the Bankruptcy Court on April 22, 2004, authorizing and approving the Postpetition Credit Agreement and the agreements related thereto, and any subsequent orders approving amendments to the Postpetition Credit Agreement.

**1.97** *Postpetition Interest* means, collectively, such interest, reasonable fees, costs, or charges provided for under the agreements between a Debtor and a Claimholder whose Claim is secured by property of the Estates to the extent such items have accrued and are payable pursuant to the provisions of the Bankruptcy Code including, without limitation, section 506(b) of the Bankruptcy Code.

**1.98** *Postpetition Lenders* means the lenders from time to time party to the Postpetition Credit Agreement.

-13-

**1.99**   *Priority Tax Claim* means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.100**   *Pro Rata* means, from time to time, unless the Plan specifically provides otherwise, (i) with respect to Allowed Claims, the same proportion that the Allowed Amount of a Claim of a Creditor in a particular Class of a Debtor bears to the sum of the aggregate Allowed Amounts of all Claims (including Disputed Claims, but excluding Disallowed Claims) of that particular Class of Claims for all Debtors and (ii) with respect to Allowed Interests, the proportion of the number of shares or units held by such Interestholder in relation to the total number of such shares or units outstanding included in such Class (including Disputed Interests, but excluding Disallowed Interests); provided, however, that with respect to Senior Note Claims in Class 4, "Pro Rata" means the proportion that the principal face amount of the Senior Notes held by the holder of a Claim in Class 4 bears to the aggregate principal face amount of the Senior Notes.

**1.101**   *Professional* means (a) any professional employed in the Chapter 11 Cases pursuant to section 327 or 1103 of the Bankruptcy Code or otherwise and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.102**   *Professional Fee Claim* means an Administrative Claim under section 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Chapter 11 Cases on or prior to and including the Effective Date.

**1.103**   *Professional Fee Order* means the order entered by the Bankruptcy Court on April 22, 2004, authorizing the interim payment of Professional Fee Claims subject to the Holdback Amount.

**1.104**   *Registration Rights Agreement* means the agreement, a form of which is attached hereto as Exhibit E, whereby Reorganized Haynes will be obligated to register certain shares of New Common Stock pursuant to the terms and conditions of such agreement.

**1.105**   *Reinstated* or *Reinstatement* means (i) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the holder of such Claim or Interest so as to leave such Claim or Interest unimpaired in accordance with section 1124 of the Bankruptcy Code or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the

-14-

occurrence of a default (a) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (b) reinstating the maturity of such Claim or Interest as such maturity existed before such default; (c) compensating the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (d) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest.

**1.106** *Released Parties* means, collectively, (i) all officers of each of the Debtors, all members of the boards of directors of each of the Debtors, and all employees of each of the Debtors, in each case, as of the date of commencement of the hearing on confirmation of the Plan, (ii) the Creditors Committee and all members of the Creditors Committee in their respective capacities as such, (iii) the Ad Hoc Noteholders Committee and all members of the Ad Hoc Noteholders Committee in their capacities as such, (iv) the Postpetition Agent in its capacity as such, (v) the Postpetition Lenders in their capacities as such, (vi) the Senior Notes Trustee in its capacity as such, (vii) Blackstone, (viii) all Professionals, and (ix) with respect to each of the above-named Persons, such Person's affiliates, principals, employees, agents, officers, directors, financial advisors, attorneys and other professionals, in their capacities as such.

**1.107** *Reorganized* means the applicable Debtor from and after the Effective Date, subject to the Restructuring Transactions.

**1.108** *Reorganized Debtors* means collectively, the Debtors, or any successors thereto by merger, consolidation, or otherwise, on or after the Effective Date.

**1.109** *Restructuring Transaction(s)* means a dissolution or winding up of the corporate existence of a Debtor or the consolidation, merger, contribution of assets, or other transaction in which a Reorganized Debtor merges with or transfers substantially all of its assets and liabilities to a Reorganized Debtor or their Affiliates, on or after the Effective Date in accordance with Section 7.3 of this Plan.

**1.110** *Retained Actions* means (a) all claims, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtor's estate may hold against any Person, including, without limitation, any Causes of Action brought prior to the Petition Date, and actions against any Persons for failure to pay for products or services provided or rendered by the Debtors, (b) all claims, Causes of Action, suits and proceedings relating to strict enforcement of the Debtors' intellectual property rights, including patents, copyrights and trademarks, and (c) all claims or Causes of Action seeking the recovery of the Debtors' or the

-15-

Reorganized Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtors' or the Reorganized Debtors' business; provided that any and all claims released under the Plan are excluded from the foregoing. A nonexclusive list of the Retained Actions and Retained Avoidance Claims is set forth in Exhibit A attached hereto.

      **1.111** *Retained Avoidance Claims* means all Avoidance Claims other than Claims released under the Plan. A nonexclusive list of the Retained Actions and Retained Avoidance Claims is set forth in Exhibit A attached hereto.

      **1.112** *Retiree Medical Programs* means the various programs in effect as of the Petition Date pursuant to which the Debtors provide medical, dental, life insurance and prescription drug benefits to retired employees, including former union workers, and dependents located in the United States.

      **1.113** *Schedules* means the schedules of assets and liabilities and the statements of financial affairs, if any, Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rules, as such schedules or statements have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

      **1.114** *Secured Claim* means a Claim that is secured by a lien on property in which the Debtors' Estates have an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claimholder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

      **1.115** *Securities Act* means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended.

      **1.116** *Senior Noteholder* means the holders of the Senior Notes.

      **1.117** *Senior Noteholder Shares* means 9,600,000 shares of New Common Stock.

      **1.118** *Senior Note Claim* means a Claim for principal or interest on account of the Senior Notes.

      **1.119** *Senior Notes* means those certain 11 ⅝% Senior Notes due September 1, 2004 issued by Haynes under the Indenture.

**1.120** *Senior Notes Trustee* means Wells Fargo Bank, N.A., as successor trustee under the Indenture.

**1.121** *Servicer* has the meaning ascribed to it in Section 7.6 hereof.

**1.122** *Solicitation Order* means the order entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan.

**1.123** *Tentative Agreement* means that certain Tentative Collective Bargaining Agreement between Haynes and the United Steel Workers of America, for itself and on behalf of its Local No. 2958, dated February 5, 2004, ratified by United Steel Workers of America Local No. 2958 on February 13, 2004, which modifies the Collective Bargaining Agreement.

**1.124** *Unimpaired Claim* means a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.125** *Voting Deadline* means the voting deadline date for voting to accept or reject this Plan, as determined by the Bankruptcy Court and set forth in the Solicitation Order.

**C.    Rules of Interpretation**

For purposes of this Plan, unless otherwise provided herein, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (e) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (f) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (g) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) subject to the provisions of any contract, certificates of incorporation, by-laws,

-17-

instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; and (j) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

This Plan is the product of extensive discussions and negotiations between and among, inter alia, the Debtors, the Creditors Committee, and certain other creditors and constituencies. Each of the foregoing was represented by counsel who either (a) participated in the formulation and documentation of, or (b) was afforded the opportunity to review and provide comments on, the Plan, Disclosure Statement, and the documents ancillary thereto. Accordingly, the general rule of contract construction known as "contra preferentem" shall not apply to the construction or interpretation of any provision of this Plan, Disclosure Statement, or any contract, instrument, release, indenture, exhibit, or other agreement or document generated in connection herewith.

**D.**    **Computation of Time**

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**E.**    **References to Monetary Figures**

All references in the Plan to monetary figures shall refer to United States of America currency unless otherwise expressly provided.

**F.**    **Exhibits**

All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date. After the Exhibit Filing Date, copies of Exhibits can be obtained upon written request to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Attn: John Wm. Butler, Jr., Esq. and J. Eric Ivester, Esq.), counsel to the Debtors, by downloading such exhibits from the Court's website at www.insb.uscourts.gov (a PACER account is required), or on the Claims Agent's Internet website, www.kccllc.net/haynes. To the extent any Exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of the Plan shall control.

**G.**    **Governing Law**

-18-

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (i) the State of Indiana shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (unless such agreement, document or instrument provides otherwise) and (ii) the laws of the state of incorporation of the Debtors shall govern corporate governance matters with respect to the Debtors, in either case without giving effect to the principles of conflicts of law thereof.

**ARTICLE II**

**ADMINISTRATIVE EXPENSES
AND PRIORITY TAX CLAIMS**

2.1      *Administrative Claims.*  Subject to the provisions of Articles IX and X of this Plan, on (a) the first Periodic Distribution Date occurring after the date an Administrative Claim becomes an Allowed Administrative Claim or (b) the date an Allowed Administrative Claim becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the holder of such Allowed Administrative Claim, provided that such date may not precede the first Periodic Distribution Date, an Allowed Administrative Claimholder in any Debtor's Chapter 11 Case, shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Administrative Claim, (x) Cash equal to the unpaid portion of such Allowed Administrative Claim or (y) such other treatment as to which the Debtors (or the Reorganized Debtors) and such Claimholder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

2.2      *Priority Tax Claims.*  Commencing on (a) the first Periodic Distribution Date occurring after the date a Priority Tax Claim becomes an Allowed Priority Tax Claim or (b) the date an Allowed Priority Tax Claim first becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the holder of such Allowed Priority Tax Claim, provided that such date may not precede the first Periodic Distribution Date, at the sole option of the Debtors (or the Reorganized Debtors after the Effective Date), the Allowed Priority Tax Claimholder shall receive on account of such Priority Tax Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (a) equal Cash payments made on the last Business Day of every three (3) month period following the Effective Date, over a period not exceeding six (6) years after the assessment of the tax on which such Claim is based, totaling the principal amount of such Claim plus simple interest on any outstanding balance from the Effective Date calculated at a fixed rate of five percent (5%) per annum from the Effective Date, or such lesser

rate agreed to by a particular taxing authority, (b) such other treatment agreed to by the Allowed Priority Tax Claimholder and the Debtors (or the Reorganized Debtors), provided such treatment is on more favorable terms to the Debtors (or the Reorganized Debtors after the Effective Date) than the treatment set forth in subsection (a) above, or (c) payment in full in Cash.

## ARTICLE III

### CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is designation of Classes of Claims against and Interests in the Debtors. A Claim or Interest is placed in a particular Class for purposes of voting on the Plan and of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified, and their treatment is set forth in Article II herein.

Because of the request that the Debtors be substantively consolidated for various purposes including for voting and distribution purposes, all of the Claims against and Interests in the Debtors are included in the Classes described below.

3.1 *Class 1.* Class 1 consists of all Secured Claims.

3.2 *Class 2.* Class 2 consists of all Other Priority Claims.

3.3 *Class 3.* Class 3 consists of all General Unsecured Claims.

3.4 *Class 4.* Class 4 consists of all Senior Note Claims.

3.5 *Class 5.* Class 5 consists of all Intercompany Claims.

3.6 *Class 6.* Class 6 consists of all Old Common Stock Interests.

3.7 *Class 7.* Class 7 consists of all Other Old Equity Interests.

## ARTICLE IV

### IDENTIFICATION OF CLASSES OF CLAIMS
### AND INTERESTS IMPAIRED AND UNIMPAIRED BY THE PLAN

      **4.1**    *Unimpaired Classes of Claims.* The following Classes are Unimpaired by the Plan:

           Class 1      (Secured Claims)
           Class 2      (Other Priority Claims)

      **4.2**    *Impaired Classes of Claims and Interests.* The following Classes are or may be Impaired by the Plan:

           Class 3      (General Unsecured Claims)
           Class 4      (Senior Note Claims)
           Class 5      (Intercompany Claims)
           Class 6      (Old Common Stock Interests)
           Class 7      (Other Old Equity Interests)

## ARTICLE V

### PROVISIONS FOR TREATMENT
### OF CLAIMS AND INTERESTS

      **5.1**    *Class 1: Secured Claims.* Except as otherwise provided in and subject to Section 9.9 of this Plan, at the option of the Debtors (or the Reorganized Debtors), with the consent of the Creditors Committee, which consent will not be unreasonably withheld, (i) the legal, equitable, and contractual rights of each Allowed Secured Claimholder shall be Reinstated or (ii) each Allowed Secured Claimholder shall receive, in full satisfaction, settlement and release of, and in exchange for, its Allowed Secured Claim (A) Cash in an amount equal to the value of the Secured Claimholder's interest in the property of the Estate which constitutes collateral for such Allowed Secured Claim, or (B) the property of the Estate which constitutes collateral for such Allowed Secured Claim, or (C) such other treatment as to which the Debtors (or the Reorganized Debtors), with the consent of the Creditors Committee, which consent will not be unreasonably withheld, and the holder of such Allowed Secured Claim have agreed upon in writing, provided that such treatment is not more favorable than the treatment in clause (A) or clause (B) above. The Debtors (or the Reorganized Debtors), with the consent of the Creditors Committee, which consent will not be

-21-

unreasonably withheld, shall determine which treatment of those set forth in the preceding sentence will be provided to each Allowed Secured Claim on the later of (i) the Effective Date or (ii) ten days after the date such Claim becomes an Allowed Secured Claim. The Reorganized Debtors shall provide notice of the treatment to be provided to each holder of an Allowed Secured Claim as soon as practicable after the later of (x) the Effective Date or (y) ten days after the date such Claimholder's claim becomes an Allowed Secured Claim. In the event the Debtors or the Reorganized Debtors, as the case may be, fail to designate the treatment of an Allowed Secured Claim, the legal, equitable, and contractual rights of the Allowed Secured Claimholder with respect to such Allowed Secured Claim shall be Reinstated. The failure of a party in interest to object to such Secured Claims in their Chapter 11 Cases shall be without prejudice to the Reorganized Debtors' right to contest or otherwise defend against such Claims in the Bankruptcy Court or other appropriate non-bankruptcy forum (at the option of the Debtors or the Reorganized Debtors) when and if such Claims are sought to be enforced by the Secured Claimholder. Notwithstanding section 1141(c) or any other provision of the Bankruptcy Code, all valid, enforceable and perfected prepetition liens on property of the Debtors held by or on behalf of the Secured Claimholders with respect to such Claims shall survive the Effective Date and continue in accordance with the contractual terms of the underlying agreements with such Claimholders and/or applicable law until, as to each such Claimholder, the Allowed Secured Claims of such Secured Claimholder are satisfied in accordance with the provisions of this Section 5.1.

**5.2    *Class 2: Other Priority Claims.*** Except as otherwise provided in and subject to Section 9.9 of this Plan, on (i) the first Periodic Distribution Date occurring after the date an Other Priority Claim becomes an Allowed Other Priority Claim or (ii) the date an Allowed Other Priority Claim becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the holder of such Allowed Other Priority Claim, provided that such date may not precede the first Periodic Distribution Date, at the sole option of the Debtors (or the Reorganized Debtors), the holder of an Allowed Other Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Other Priority Claim, (x) Cash equal to the amount of such Allowed Other Priority Claim or (y) such other treatment as to which the applicable Debtor (or Reorganized Debtor) and such Claimholder shall have agreed in writing.

**5.3    *Class 3:  General Unsecured Claims.*** The Debtors have assumed that General Unsecured Claims are Impaired by the Plan. Except as otherwise provided in and subject to Section 9.9 of this Plan, on (i) the first Periodic Distribution Date occurring after the date a General Unsecured Claim becomes an Allowed General Unsecured Claim or (ii) the date an Allowed General Unsecured Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the holder of such General Unsecured Claim, provided that such date may not precede the first Periodic Distribution Date, each Allowed General Unsecured Claimholder shall

receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such General Unsecured Claim, Cash equal to 100% of the Allowed Amount of the Claim without interest accruing on or after the Petition Date.

      **5.4**    *Class 4: Senior Note Claims.*  Senior Note Claims shall be deemed Allowed Claims in the aggregate amount of $149,476,910.00. On or as soon as reasonably practicable after the Distribution Date, each holder of an Allowed Senior Note Claim shall receive, in full satisfaction, release, and discharge of its Allowed Senior Note Claim, its Pro Rata share of the Senior Noteholder Shares (subject to dilution by the shares of New Common Stock issued pursuant to or on account of any management or employee incentive plan or other similar plan or issued in order to list the New Common Stock on a national securities exchange or for quotation on a national automated interdealer quotation system).

      **5.5**    *Class 5: Intercompany Claims.*  On the Effective Date, all Intercompany Claims will, in the sole discretion of the applicable Debtor or Reorganized Debtor, (a) be preserved and Reinstated, (b) be released, waived and discharged as of the Effective Date, or (c) be contributed to the capital of the obligor corporation.

      **5.6**    *Class 6: Old Common Stock Interests.*  On the Effective Date, the Old Common Stock Interests shall be cancelled. On or as soon as reasonably practicable after the Distribution Date, each holder of an Allowed Old Common Stock Interest shall receive in full satisfaction, release, and discharge of its Allowed Old Common Stock Interests and any and all claims and liabilities arising pursuant to or in any way related to the Old Common Stock Interests, such Interestholder's Pro Rata share of the Old Common Stockholder Shares (subject to dilution by the shares of New Common Stock issued pursuant to or on account any management or employee incentive plan or other similar plan or issued in order to list the New Common Stock on a national securities exchange or for quotation on a national automated interdealer quotation system).

      **5.7**    *Class 7: Other Old Equity Interests.*  On the Effective Date, the Other Old Equity Interests will be cancelled and the holders of Other Old Equity Interests shall not receive or retain any distribution of property on account of such Other Old Equity Interests under the Plan.

      **5.8**    *Reservation of Rights.*  Except as otherwise explicitly provided in the Plan, nothing will affect the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment of Unimpaired Claims. Except to the extent a Reorganized Debtor expressly assumes an obligation or liability of a Debtor or another Reorganized Debtor, the Plan will not operate to impose liability on any

Reorganized Debtor for the Claims against any other Debtor or the debts and obligations of any other Debtor or Reorganized Debtor, and from and after the Effective Date, each Reorganized Debtor will be separately liable for its own obligations.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN;
## EFFECT OF REJECTION BY ONE OR MORE
## IMPAIRED CLASSES OF CLAIMS OR INTERESTS

**6.1    *Impaired Classes Entitled to Vote.*** Except as otherwise provided in any order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan and Section 6.4 of the Plan, each Impaired Class of Claims and Interests that will receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan.

**6.2    *Acceptance by Impaired Classes.***

**(a)    *Impaired Claims.*** Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds (⅔) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half (½) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**(b)    *Impaired Interests.*** Pursuant to section 1126(d) of the Bankruptcy Code, an Impaired Class of Interests shall have accepted the Plan if the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds (⅔) in amount of the Allowed Interests of such Class actually voting on the Plan have voted to accept the Plan.

**6.3    *Classes Deemed to Accept the Plan.*** Class 1 Secured Claims and Class 2 Other Priority Claims and are Unimpaired by the Plan. Under section 1126(f) of the Bankruptcy Code, such Claimholders are conclusively presumed to have accepted the Plan, and the votes of such Claimholders will not be solicited. Because all Debtors are proponents of this Plan, Class 5 Intercompany Claims are deemed to have accepted this Plan. The votes of holders of such Claims therefore will not be solicited.

-24-

**6.4** *Classes Deemed to Reject Plan.* Since holders of Class 7 Other Old Equity Interests are not receiving a distribution on account of such Interests under the Plan, such Class is conclusively presumed to have rejected the Plan, and the votes of such holders will not be solicited.

**6.5** *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.* The Debtors will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code with respect to any Class which rejects, or is deemed to have rejected, the Plan.

**6.6** *Confirmability and Severability of a Plan.* The Debtors, in consultation with the Creditors Committee, reserve the right to alter, amend, modify, revoke or withdraw the Plan as it applies to any particular Debtor. A determination by the Bankruptcy Court that the Plan, as it applies to any particular Debtor, is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect (a) the confirmability of the Plan as it applies to any other Debtor or (b) the Debtors' ability to modify the Plan, as it applies to any particular Debtor, to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1** *Continued Corporate Existence.* Subject to the Restructuring Transactions, each of the Debtors shall continue to exist after the Effective Date as a separate corporate entity, with all the powers of a corporation under applicable law in the jurisdiction in which it is incorporated and pursuant to the articles or certificate of incorporation and bylaws in effect prior to the Effective Date, except to the extent such articles or certificate of incorporation and bylaws are amended by this Plan, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date.

**7.2** *Substantive Consolidation.* This Plan provides for the substantive consolidation of Haynes Holdings, Haynes, Haynes Specialty Steels and Haynes Sour Gas for Plan purposes, including voting and distribution purposes. This Plan is deemed a motion for substantive consolidation to the extent necessary. For such purposes, on the Effective Date, (a) all guaranties of any Debtor of the payment, performance, or collection of another Debtor with respect to any Class of Claims or Interests shall be deemed eliminated and cancelled; (b) any obligation of any Debtor and all guaranties with respect to any Class of Claims or Interests executed by one or more of the other Debtors and any joint or several liability of any of the Debtors shall be treated as a single obligation, and any obligation of two or more Debtors, and all multiple Impaired Claims against Debtors on account of such joint obligations, shall be treated and Allowed only as a single Claim

-25-

against the consolidated Debtors; and (c) each Claim filed in the Chapter 11 Cases of any Debtor shall be deemed filed against the consolidated Debtors and shall be deemed a Claim against and an obligation of the consolidated Debtors. Except as set forth in this Article and elsewhere in this Plan, such substantive consolidation will not (other than for purposes related to this Plan) (a) affect the legal and corporate structures of the Debtors or Reorganized Debtors, subject to the right of the Debtors or Reorganized Debtors to effect the Restructuring Transactions contemplated by this Plan, (b) cause any Debtor to be liable for any Claim or Interest under this Plan for which it otherwise is not liable, and the liability of any Debtor for any such Claim or Interest will not be affected by such substantive consolidation, (c) affect Intercompany Claims of Debtors against Debtors, except as otherwise provided in this Plan, or (d) affect the Interests in the Affiliate Debtors, except as otherwise provided in this Plan and as may be required in connection with the Restructuring Transactions contemplated by this Plan.

   **7.3** ***Restructuring Transactions.*** On or prior to the Effective Date, the Debtors and Reorganized Debtors shall take such actions as may be necessary or appropriate to effect the relevant Restructuring Transactions, including, but not limited to, the merger of Haynes Holdings into Haynes, and all of the transactions described in this Plan. Such actions may also include: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation or reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any property, right, liability, duty or obligation on terms consistent with the terms of this Plan; (c) the filing of appropriate certificates of incorporation, merger or consolidation with the appropriate governmental authorities under applicable law; and (d) all other actions that such Debtors and Reorganized Debtors determine are necessary or appropriate, including the making of filings or recordings in connection with the relevant Restructuring Transaction. The form of each Restructuring Transaction shall be determined by the boards of directors of a Debtor or Reorganized Debtor party to any Restructuring Transaction. In the event a Restructuring Transaction is a merger transaction, from and after the consummation of such Restructuring Transaction, the surviving Reorganized Debtor shall assume and perform the obligations under this Plan of each non-surviving Reorganized Debtor. In the event a Reorganized Debtor is liquidated, the Reorganized Debtors (or the Reorganized Debtor which owned the stock of such liquidating Reorganized Debtor prior to such liquidation) shall assume and perform such obligations. Implementation of the Restructuring Transactions shall not affect the distributions under the Plan.

   **7.4** ***Corporate Action.*** Each of the matters provided for under the Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and

-26-

shall be authorized and approved in all respects without any requirement of further action by stockholders, creditors, or directors of the Debtors.

      **7.5**    *Certificates of Incorporation and Bylaws.* The certificates of incorporation and bylaws of the Reorganized Debtors shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code. The Certificate of Incorporation of Reorganized Haynes shall, among other things, (a) authorize the issuance of ten million (10,000,000) shares of New Common Stock, $0.01 par value per share; (b) authorize an additional ten million (10,000,000) shares of New Common Stock, $0.01 par value per share, for future issuance upon terms to be designated from time to time by the board of directors of Reorganized Haynes; (c) authorize twenty million (20,000,000) shares of preferred stock (the "New Preferred Stock") upon terms to be designated from time to time by the board of directors of Reorganized Haynes; (d) authorize Reorganized Haynes to dilute the New Common Stock, upon terms to be designated from time to time by the New Board of Reorganized Haynes, but only to the extent necessary to list the New Common Stock on a national securities exchange or to make available for quotation on a national automated interdealer quotation system; and (e) pursuant to section 1123(a)(6) of the Bankruptcy Code, include (x) a provision prohibiting the issuance of non-voting equity securities for a period of two (2) years from the Effective Date, and, if applicable, (y) a provision setting forth an appropriate distribution of voting power among classes of equity securities possessing voting power, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends. After the Effective Date, the Reorganized Debtors may amend and restate the Certificates of Incorporation and Bylaws as permitted by applicable law. The Certificates of Incorporation and Bylaws of the Reorganized Debtors shall be in substantially the form attached to this Plan as <u>Exhibit B</u> and <u>Exhibit C</u>, respectively.

      **7.6**    *Cancellation of Existing Securities and Agreements.* On the Effective Date, except as otherwise specifically provided for herein, (a) the Existing Securities and any other note, bond, indenture, or other instrument or document evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors, except such notes or other instruments evidencing indebtedness or obligations of the Debtors that are Reinstated under the Plan, shall be cancelled, and (b) the obligations of, Claims against, and/or Interests in the Debtors under, relating, or pertaining to any agreements, indenture, certificates of designation, bylaws, or certificate or articles of incorporation or similar document governing the Existing Securities and any other note, bond, indenture, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors, except such notes or other instruments evidencing indebtedness or obligations of the Debtors that are Reinstated under the Plan, as the case may be, shall be released and discharged; <u>provided, however,</u> that the Indenture and any other agreement that governs the rights of the

Claimholder and that is administered by an indenture trustee, an agent, or a servicer (each hereinafter referred to as a "Servicer") shall continue in effect solely for purposes of allowing such Servicer to make the distributions to be made on account of such Claims under the Plan as provided in Article IX of the Plan. All reasonable compensation, fees, expenses, and disbursements incurred by the Indenture Trustee before, on and after the Petition Date, but before the Effective Date, including the reasonable fees, expenses and disbursements of agents and counsel retained by the Indenture Trustee, shall be paid in Cash on or as soon as practicable after the Effective Date by Reorganized Haynes as an Administrative Expense, without the need for application to, or approval of, any court. The Debtors estimate that payments pursuant to Sections 7.6 and 9.6 of the Plan for compensation, fees, expenses and disbursements incurred prior to the Effective Date do not exceed seventy-five thousand dollars ($75,000), the Indenture Trustee estimates that such fees may total one hundred twenty-five thousand dollars ($125,000). Any dispute as to the reasonableness of such fees shall be determined by the Bankruptcy Court in accordance with section 503 of the Bankruptcy Code. To the extent that the Indenture Trustee provides services after the Effective Date related to the distributions pursuant to the Plan, the Indenture Trustee will be paid by Reorganized Haynes, without court approval, reasonable compensation for such services and reimbursement of reasonable expenses incurred in connection therewith. Such payments will be in amounts to be agreed upon by the Indenture Trustee and the Reorganized Debtors.

       **7.7**    *Reinstatement of Common Stock of Affiliate Debtors*. Subject to the Restructuring Transactions, the common stock in the Affiliate Debtors shall be Reinstated in exchange for Haynes' agreement to cause the distribution of New Common Stock and other consideration provided for under this Plan to holders of Allowed Claims and Allowed Interests in accordance with the terms of this Plan.

       **7.8**    *Directors and Officers.*

       (a)    The existing senior officers of the Debtors shall serve as senior officers of the Reorganized Debtors in their current capacities after the Effective Date, subject to the terms of the applicable employment agreements and the rights of the respective boards of directors.

       (b)    Upon the Effective Date, the new board of directors of Reorganized Haynes (the "New Board of Reorganized Haynes") shall consist of seven (7) directors, including Francis J. Petro (or in the event of his death, incapacity, or resignation, the chief executive officer of Reorganized Haynes) and six representatives designated by the Creditors Committee. The New Board of Reorganized Haynes, including any required committee(s) thereof, shall comply with any other qualification, experience, and independence requirements under applicable law, including the Sarbanes-Oxley Act of 2002. The chairman of the board shall be designated by a majority of the

members of the New Board of Reorganized Haynes. Thereafter, unless otherwise provided in the Plan, the selection and the term of the board of directors of Reorganized Haynes shall be subject to the provisions of the certificate of incorporation and bylaws of Reorganized Haynes.

(c)    The Persons designating board members shall file with the Bankruptcy Court and give to the Debtors written notice of the identities of such members on a date that is not less than ten (10) days prior to the Confirmation Hearing; provided, however, that if and to the extent that any party fails to file and give such notice, the Debtors shall designate the members of the New Board of Reorganized Haynes by announcing their identities at the Confirmation Hearing.

(d)    Board members shall serve an initial term for a period from the Effective Date through the date of the annual meeting that first occurs after a date which is one (1) year after the Effective Date and for one (1) year terms thereafter (with such subsequent terms subject to election by shareholder vote) as provided in the certificates of incorporation and bylaws of the Reorganized Debtors.

(e)    On the Effective Date, the term of the current members of the board of directors of Haynes Holdings, Haynes Sour Gas and Haynes Specialty Steels shall expire. From and after the Effective Date, the initial board of directors of Reorganized Haynes Holdings (if applicable), Reorganized Haynes Sour Gas and Reorganized Haynes Specialty Steels shall be the same directors as those Persons designated as directors of Reorganized Haynes pursuant to the procedures set forth above.

### 7.9    *Pension Plan and Retiree Medical Programs.*

(a)    Upon the occurrence of the Effective Date, the Reorganized Debtors intend to continue the Pension Plan, meet the minimum funding standards under ERISA and the Internal Revenue Code, pay all PBGC insurance premiums if applicable, and administer and operate the Pension Plan in accordance with its terms and ERISA. Nothing in this Plan shall be deemed to discharge, release, or relieve the Debtors, Reorganized Debtors, any member of the Debtors' controlled groups (as defined in 29 U.S.C. § 1301(a)(14)), or any other party, in any capacity, from any current or future liability with respect to the Pension Plan, and the PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability as a result of the Plan's provisions or consummation.

(b)    Upon the occurrence of the Effective Date, the Reorganized Debtors intend to continue to pay benefits under the Retiree Medical Programs if and to the extent the Debtors are otherwise obligated to provide such benefits. Nothing in this Plan shall be deemed to discharge, release, or relieve the Debtors or the Reorganized Debtors from any liability with respect

to the Retiree Medical Programs and the beneficiaries of the Retiree Medical Programs or their representatives shall not be enjoined or precluded from enforcing such liability as a result of the Plan's provisions or confirmation.

(c)    Notwithstanding anything to the contrary in the Plan, the Reorganized Debtors shall maintain all of their existing rights, including, but not limited to, any rights that they may have to amend, modify or terminate those retirement and other agreements discussed in Section 7.9 of the Plan.

### 7.10    *Employment, Indemnification and Other Agreements.*

(a)    Except as otherwise provided in the Plan, upon the occurrence of the Effective Date pursuant to section 365(b) of the Bankruptcy Code and in accordance with Section 8.1 of the Plan, the Debtors shall assume the employment agreements and/or severance agreements as modified of certain executives and members of senior management.  Copies of the modified agreements are attached to the Plan as group <u>Exhibit D</u> and shall be filed on or before the Exhibit Filing Date.  Except as otherwise provided in the Plan, to the extent that any of the Debtors has in place as of the Effective Date, employment, retirement, indemnification or other agreements with their respective active directors, officers and employees who will continue in such capacities after the Effective Date, or retirement income plans, welfare benefits plans and other plans for such Persons, such agreements, programs and plan will remain in place after the Effective Date, and the Reorganized Debtors intend to continue to honor such agreements programs and plans.  Benefits provided under such agreements or plans may include benefits under qualified and non-qualified retirement plans; health and dental coverage; short and long-term disability benefits; death and supplemental accidental death benefits; vacation; leased car; club memberships; financial consulting; tax preparation and estate planning as well as an annual physical examination, each paid or provided commensurate with an employee's position in accordance with the Debtors' or Reorganized Debtors' policies then in effect.  Such agreements and plans also may include equity, bonus and other incentive plans in which officers and other employees of the Reorganized Debtors may be eligible to participate; <u>provided, however,</u> that pursuant to the Long-Term Incentive Plan, there shall be reserved for certain members of management and other employees of the Reorganized Debtors a certain number of shares of New Common Stock and other securities all as more fully described in Section 7.12 of the Plan.  However, as of the Effective Date, the Reorganized Debtors shall have the authority to terminate, amend or enter into employment, retirement, indemnification and other agreements with its respective active directors, officers and employees and to terminate, amend or implement retirement income plans, welfare benefits plans and other plans for active employees, subject to the existing contractual rights, if any, of the directors, officers and employees affected thereby.

-30-

(b)     Notwithstanding anything to the contrary herein, the Reorganized Debtors shall maintain all of their existing rights, including, but not limited to, any rights that they may have to amend, modify or terminate those employment, indemnification and other agreements discussed in this Section 7.10.

**7.11    *Continuation of Insured Workers' Compensation Programs.***    Upon occurrence of the Effective Date, the Reorganized Debtors shall continue the Insured Workers' Compensation Programs in accordance with applicable state laws. Nothing in the Plan shall be deemed to discharge, release, or relieve the Debtors or Reorganized Debtors from any current or future liability with respect to any of the Insured Workers' Compensation Programs. The Reorganized Debtors shall be responsible for all valid claims for benefits and liabilities under the Insured Workers' Compensation Programs regardless of when the applicable injuries were incurred. Any and all obligations under the Insured Workers' Compensation Programs shall be paid in accordance with the terms and conditions of the Insured Workers' Compensation Programs and in accordance with all applicable laws. Notwithstanding anything to the contrary herein, the Reorganized Debtors shall maintain all of their existing rights, including, but not limited to, any rights that they may have to amend, modify or terminate the Insured Workers' Compensation Programs.

**7.12    *Implementation of the Long-Term Incentive Program.***    The Reorganized Debtors shall implement the Long-Term Incentive Plan in order to promote the growth and general prosperity of the Reorganized Debtors by offering incentives to key employees who are primarily responsible for the growth of the Reorganized Debtors, and to attract and retain qualified employees and thereby benefit the shareholders of the Reorganized Debtors based on growth of the Reorganized Debtors. The Long-Term Incentive Plan will be administered by the New Board of Reorganized Haynes. Exhibit D hereto includes a description of the Long-Term Incentive Plan.

**7.13    *Issuance of New Common Stock.***

(a)     As described in Section 7.5 herein, on the Effective Date, Reorganized Haynes will authorize up to twenty million (20,000,000) shares of New Common Stock. On or as soon as reasonably practicable after the Effective Date, Reorganized Haynes shall issue and exchange, as necessary, for the benefit of holders of Senior Note Claims and Old Common Stock Interests, ten million (10,000,000) shares of the New Common Stock in accordance with the terms of the Plan. The issuance of the New Common Stock is authorized without the need for any further corporate action. The issuance of the New Common Stock and the distribution thereof to Claimholders and Interestholders shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code. Without limiting the effect of section 1145 of the Bankruptcy Code, Reorganized Haynes will enter into a Registration Rights Agreement with each

-31-

holder of an Allowed Class 4 Senior Note Claim in the Haynes Chapter 11 Case (i) who by virtue of holding New Common Stock to be distributed under the Plan and/or its relationship with Reorganized Haynes could reasonably be deemed to be an "affiliate" (as such term is used within the meaning of applicable securities laws) of Reorganized Haynes, and (ii) who requests in writing that Reorganized Haynes execute such agreement, such request to be made within 90 days after the Effective Date. A form Registration Rights Agreement will be filed by the Debtors, as <u>Exhibit E</u> hereto, with the Bankruptcy Court no later than the Exhibit Filing Date. The Registration Rights Agreement shall contain certain registration rights for the benefit of the signatories thereto.

(b)     Reorganized Haynes shall use commercially reasonable efforts to list the New Common Stock on a national securities exchange or for quotation on a national automated interdealer quotation system within one year of the Effective Date unless the New Board of Reorganized Haynes determines otherwise, with such efforts to commence as soon as reasonably practicable after the Effective Date. Reorganized Haynes shall have no liability if it is unable to list the New Common Stock as described above. Persons receiving distributions of New Common Stock, by accepting such distributions, shall have agreed to cooperate with Reorganized Haynes' reasonable requests to assist Reorganized Haynes in its efforts to list the New Common Stock on a securities exchange or quotation system.

**7.14     *Post-Effective Date Financing.*** The Postpetition Credit Agreement will be amended and restated or otherwise replaced in a manner consistent with the terms of the Commitment Letter and will be the Reorganized Debtors' primary source of working capital from and after the Effective Date. Documents evidencing the amendment and restatement or other replacement of the Postpetition Credit Agreement shall be filed by the Debtors with the Bankruptcy Court no later than the Exhibit Filing Date and will be deemed attached hereto as <u>Exhibit F</u>. Prior notice of any proposed material modification to the Post-Effective Date Credit Agreement or the Commitment Letter with respect thereto after its filing with the Bankruptcy Court shall be provided to the Creditors Committee. In the Confirmation Order, the Bankruptcy Court shall approve the Post-Effective Date Credit Agreement in substantially the form filed with the Bankruptcy Court and authorize the Debtors to execute such documents as the  Post-Effective Date Lenders may require in order to effectuate the treatment afforded to such parties under the Post-Effective Date Credit Agreement (whether effected through an amendment and restatement or other replacement of Postpetition Credit Agreement) as provided in this Section 7.14.

**7.15     *Preservation of Causes of Action.*** In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in the Plan and/or the Confirmation Order, the Reorganized Debtors shall retain and may (but are not required to) enforce all Retained Actions and all Retained Avoidance Claims, and other similar claims arising under applicable state laws, including, without limitation, fraudulent transfer claims, if any, and all other Causes of Action of a

-32-

trustee and debtor-in-possession under the Bankruptcy Code.  A nonexclusive list of Retained Actions and Retained Avoidance Claims is set forth on Exhibit A. The Debtors, in consultation with the Creditors Committee, or the Reorganized Debtors will determine whether to bring, settle, release, compromise, or enforce any such rights (or decline to do any of the foregoing).  The Reorganized Debtors or any successors may pursue such litigation claims in accordance with the best interests of the Reorganized Debtors or any successors holding such rights of action. The failure of the Debtors to specifically list any claim, right of action, suit or proceeding in the Debtors' Schedules or in Exhibit A does not, and will not be deemed to, constitute a waiver or release by the Debtors of such claim, right of action, suit or proceeding, and the Reorganized Debtors will retain the right to pursue such claims, rights of action, suits or proceedings in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit or proceeding upon or after the confirmation or consummation of the Plan.

      **7.16** *Effectuating Documents and Further Transactions.*  Each of the chief executive officer, chief financial officer, any other officer of any of the Debtors, or their respective designees shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The secretary or assistant secretary of any of the Debtors shall be authorized to certify or attest to any of the foregoing actions.

      **7.17** *Exemption from Transfer Taxes and Recording Fees.*  Pursuant to section 1146(c) of the Bankruptcy Code, (a) the issuance, transfer or exchange of notes or equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment of any lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, any merger agreements; agreements of consolidation, restructuring, disposition, liquidation or dissolution; deeds; bills of sale; and transfers of tangible property, will not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales or use tax or other similar tax. Any transfers from the Debtors to the Reorganized Debtors or otherwise pursuant to the Plan shall not be subject to any such taxes, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Unless the Bankruptcy Court orders otherwise, any and all of the foregoing transactions whether taken on or after the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

**ARTICLE VIII**

**TREATMENT OF EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES**

    **8.1** *Assumed Contracts and Leases.* Each executory contract and unexpired lease to which the Debtors are a party shall be deemed automatically assumed and Reinstated as of the Effective Date, unless such executory contract or unexpired lease (a) shall have been previously rejected by the Debtors, (b) is the subject of a motion to reject filed, or a notice of rejection served pursuant to order of the Bankruptcy Court, on or before the Confirmation Date, (c) is listed on the schedule of rejected contracts and leases annexed hereto as Exhibit G, or (d) expired prior to the Effective Date and/or is no longer executory on the Effective Date by its own terms.   The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions, pursuant to section 365(b)(1) of the Bankruptcy Code and, to the extent applicable, section 365(b)(3) of the Bankruptcy Code, as of the Effective Date.

    Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to a Final Order of the Bankruptcy Court or is otherwise rejected as a part of this Plan.

    **8.2** *Rejected Contracts and Leases.* Except with respect to executory contracts and unexpired leases that have previously been rejected or are the subject of a motion to reject filed, or a notice of rejection served pursuant to an order of the Bankruptcy Court, on or before the Confirmation Date, all executory contracts and unexpired leases set forth on Exhibit G shall be deemed automatically rejected as of the Effective Date; provided, however, that neither the inclusion by the Debtors of a contract or lease on Exhibit G nor anything contained in this Plan shall constitute an admission by the Debtors that such lease or contract is an unexpired lease or executory contract or that any Debtor, or any of the Debtors' Affiliates, has any liability thereunder.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code. The Debtors reserve the right to file a motion on or before the Confirmation Date to reject any executory contract or unexpired lease.

-34-

**8.3** *Payments Related to Assumption of Executory Contracts and Unexpired Leases.* The provisions (if any) of each executory contract and unexpired lease to be assumed and Reinstated under this Plan which are or may be in default shall be satisfied solely by Cure. Any Person claiming that a monetary cure amount is due in connection with the assumption of any executory contract or unexpired leases as contemplated by section 365(b) of the Bankruptcy Code must file a monetary cure claim with the Bankruptcy Court asserting all alleged amounts accrued through the Effective Date, if any (a "Cure Claim"), no later than thirty (30) days after the Effective Date (the "Cure Claim Submission Deadline"). Any party failing to submit a Cure Claim by the Cure Claim Submission Deadline shall be forever barred from asserting, collecting, or seeking to collect any amounts relating thereto against the Debtors or the Reorganized Debtors. The Reorganized Debtors shall have thirty (30) days from the Cure Claim Submission Deadline to file an objection to any Cure Claim (the "Cure Claim Objection Deadline"). Any disputed Cure Claims shall be resolved either consensually by the parties, or by the Bankruptcy Court. Disputed Cure Claims shall be set for status at subsequent hearings following the Cure Claim Submission Deadline with separate evidentiary hearings to be set by the Bankruptcy Court as needed. If the Reorganized Debtors do not dispute a Cure Claim, then the Reorganized Debtors shall pay the Cure Claim, if any, to the claimant within twenty (20) days of the Cure Claim Objection Deadline. Disputed Cure Claims that are resolved by agreement or Final Order shall be paid by the Reorganized Debtors within twenty (20) days of such agreement or Final Order.

**8.4** *Rejection Damages Bar Date.* If the rejection by the Debtors (pursuant to the Plan or otherwise) of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against either the Debtors or the Reorganized Debtors or such entities' properties unless a proof of claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Debtors within thirty (30) days after service of the earlier of (a) notice of the Confirmation Order or (b) other notice that the executory contract or unexpired lease has been rejected.

**8.5** *Collective Bargaining Agreement; Tentative Agreement.* The Debtors will assume the Collective Bargaining Agreement as modified by the Tentative Agreement upon the occurrence of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

**8.6** *Preservation of Insurance.* The discharge and release of the Debtors as provided herein shall not diminish or impair the enforceability of any insurance policies that may cover claims against the Debtors or any other person or entity. Furthermore, assumption of any insurance policy pursuant to Article VIII of the Plan does not alter, amend, or otherwise affect either the Debtors' or insurers' rights pursuant to such insurance policy; provided, however, nothing herein

-35-

waives any contractual, state or federal rights the Debtors may have including, without limitation, those set forth in Section 365(b)(2) of the Bankruptcy Code.

## ARTICLE IX

### PROVISIONS GOVERNING DISTRIBUTIONS; PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND INTERESTS

**9.1** *Time of Distributions.* Except as otherwise provided for herein or ordered by the Bankruptcy Court, distributions under the Plan shall be made on a Periodic Distribution Date.

**9.2** *No Interest on Claims or Interests.* Unless otherwise specifically provided for in the Plan or as otherwise required by section 506(b) of the Bankruptcy Code, the Confirmation Order, the Postpetition Credit Agreement or the Postpetition Facility Order, Postpetition Interest shall not accrue or be paid on Claims, and no Claimholder or Interestholder shall be entitled to interest accruing on or after the Petition Date on any Claim, right, or Interest. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim or Disputed Interest in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim or Disputed Interest becomes an Allowed Claim or an Allowed Interest.

**9.3** *Disbursing Agent.* The Disbursing Agent shall make all distributions required under this Plan except with respect to a Claimholder or Interestholder whose distribution is governed by the Indenture or other agreement and is administered by a Servicer, which distributions shall be deposited with the appropriate Servicer, who shall deliver such distributions to the Claimholders and Interestholders in accordance with the provisions of this Plan and the terms of the Indenture or other governing agreement; provided, however, that if any such Servicer is unable to make such distributions, the Disbursing Agent, with the cooperation of such Servicer, shall make such distributions.

**9.4** *Surrender of Securities or Instruments.* On or before the Distribution Date, or as soon as practicable thereafter, each holder of an instrument evidencing either a Claim or Interest, including, without limitation, a Claim on account of the Indenture (as to each, a "Certificate"), shall surrender such Certificate to the Disbursing Agent, or, with respect to indebtedness that is governed by the Indenture or other agreement and administered by a Servicer, the respective Servicer, and such Certificate shall be cancelled solely with respect to the Debtors and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-a-vis one another to such instruments. No distribution of property hereunder shall be made to or on behalf of

-36-

any such holder unless and until such Certificate is received by the Disbursing Agent or the respective Servicer or the unavailability of such Certificate is reasonably established to the satisfaction of the Disbursing Agent or the respective Servicer. Any holder who fails to surrender or cause to be surrendered such Certificate, or fails to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Disbursing Agent or the respective Servicer prior to the second anniversary of the Effective Date, shall be deemed to have forfeited all rights and Claims in respect of such Certificate and shall not participate in any distribution hereunder, and all property in respect of such forfeited distribution, including any dividends or interest attributable thereto, shall revert to the Reorganized Debtors notwithstanding any federal or state escheat laws to the contrary.

　　　　9.5　　*Instructions to Disbursing Agent.* Prior to any distribution on account of any Claim or Interest pursuant to the Indenture or other agreement, the Servicer with respect to the Indenture or other agreement shall (a) inform the Disbursing Agent as to the amount of properly surrendered claim pursuant thereto and (b) instruct the Disbursing Agent, in a form and manner that the Disbursing Agent reasonably determines to be acceptable, of the names of such Claimholders or Interestholders who have properly surrendered Certificates.

　　　　9.6　　*Services of Indenture Trustees, Agents and Servicers.* The services, with respect to implementation of the distributions contemplated by the Plan, of Servicers under the Indenture and other agreements that govern the rights of Claimholders or Interestholders shall be as set forth elsewhere in the Plan, and the Reorganized Debtors shall reimburse any Servicer in the ordinary course for reasonable and necessary services performed by it as contemplated by, and in accordance with, this Plan without the need for the filing of an application with, or approval by, the Bankruptcy Court. The Debtors estimate that payments pursuant to Sections 7.6 and 9.6 of the Plan for compensation, fees, expenses and disbursements incurred prior to the Effective Date do not exceed seventy-five thousand dollars ($75,000), the Indenture Trustee estimates that such fees may total one hundred twenty-five thousand dollars ($125,000). Any dispute as to the reasonableness of such fees shall be determined by the Bankruptcy Court in accordance with section 503 of the Bankruptcy Code. To the extent that the Indenture Trustee provides services after the Effective Date related to the distributions pursuant to the Plan, the Indenture Trustee will be paid by Reorganized Haynes, without court approval, reasonable compensation for such services and reimbursement of reasonable expenses incurred in connection therewith. Such payments will be in amounts to be agreed upon by the Indenture Trustee and the Reorganized Debtors.

　　　　9.7　　*Claims Administration Responsibility.* The Reorganized Debtors will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions (if any) with respect to all Claims against and Interests in the Debtors; provided, however, that the foregoing shall not be deemed to divest the rights, if any, of any party in interest to object to Claims or Interests.

-37-

**9.8** *Delivery of Distributions.* Distributions to Allowed Claimholders and Allowed Interestholders shall be made by the Disbursing Agent or the appropriate Servicer, as the case may be (a) at the addresses set forth on the proofs of claim or interest filed by such Claimholders, Interestholders or Servicers, (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of claim or interest, (c) at the addresses reflected in the Schedules if no proof of claim or interest has been filed and the Disbursing Agent has not received a written notice of a change of address, or (d) in the case of a Claimholder or Interestholder whose Claim or Interest is governed by an Indenture or other agreement and is administered by a Servicer, at the addresses contained in the official records of such Servicer. If any Claimholder's or Interestholder's distribution is returned as undeliverable, no further distributions to such Claimholder or Interestholder shall be made unless and until the Disbursing Agent or the appropriate Servicer is notified of such Claimholder's or Interestholder's then current address, at which time all missed distributions shall be made to such Claimholder or Interestholder without interest. Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtors until such distributions are claimed. All claims for undeliverable distributions shall be made on or before the first anniversary of the Effective Date. After such date, all unclaimed property shall revert to the Reorganized Debtors. Upon such reversion, the claim of any Claimholder or Interestholder, or their successors, with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

**9.9** *Procedures for Treating and Resolving Disputed and Contingent Claims and Interests.*

(a) *No Distributions Pending Allowance.* No payments or distributions shall be made with respect to all or any portion of a Disputed Claim or Disputed Interest unless and until all objections to such Disputed Claim or Disputed Interest have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim or Disputed Interest has become an Allowed Claim or an Allowed Interest. All objections to Claims or Interests must be filed on or before the Claims/Interests Objection Deadline.

(b) *Distribution Reserve.* The Disbursing Agent shall withhold a separate Distribution Reserve from the property to be distributed to holders of Class 6 Old Common Stock Interests. The amount of New Common Stock withheld as a part of the Distribution Reserve shall be equal to the amount the Reorganized Debtors reasonably determine is necessary to satisfy the distributions required to be made to the Interestholders in such Class when the allowance or disallowance of each Interest is ultimately determined. The Disbursing Agent may request estimation for any Disputed Interest that is contingent or unliquidated (but is not required to do so). The Disbursing Agent will also place in the Distribution Reserve any dividends, payments, or other

-38-

distributions made on account of, as well as any obligations arising from, the property withheld in the Distribution Reserve, to the extent that such property continues to be withheld in the Distribution Reserve at the time such distributions are made or such obligations arise. The Interestholder shall not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve to pay such Interest. Nothing in the Plan or the Disclosure Statement will be deemed to entitle the Interestholder to interest accruing on or after the Petition Date on any Interest.

(c)     *Distributions After Allowance.*  Payments and distributions from the Distribution Reserve to each respective Interestholder on account of a Disputed Interest, to the extent that it ultimately becomes an Allowed Interest, will be made in accordance with provisions of the Plan that govern distributions to such Interestholders.  On the first Periodic Distribution Date following the date when a Disputed Interest becomes an Allowed Interest, the Disbursing Agent will distribute to the Interestholder any Cash or New Common Stock from the Distribution Reserve that would have been distributed on the dates distributions were previously made to Interestholders had such Allowed Interest been an Allowed Interest on such dates. After a Final Order has been entered, or other final resolution has been reached with respect to all Disputed Interests, any remaining New Common Stock or other property held in the Distribution Reserve will be distributed Pro Rata to Allowed Interestholders in accordance with the other provisions of this Plan. Subject to Section 9.2 hereof, all distributions made under subsection 9.9(c) hereof on account of an Allowed Interest will be made together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Interest had been an Allowed Interest on the dates distributions were previously made to Allowed Interestholders included in the applicable class. The Disbursing Agent shall be deemed to have voted any New Common Stock held in the Distribution Reserve in the same proportion as shares previously disbursed by the Disbursing Agent.  The Servicers shall be deemed to have voted any New Common Stock held by such Servicers in the same proportion as shares previously disbursed by such Servicers.

(d)     *De Minimis Distributions.*  Neither the Distribution Agent nor any Servicer shall have any obligation to make a distribution on account of an Allowed Claim or an Allowed Interest from any Distribution Reserve or otherwise if (a) the aggregate amount of all distributions authorized to be made from such Distribution Reserve or otherwise on the Periodic Distribution Date in question is or has a value less than $250,000, or (b) if the amount to be distributed to the specific holder of an Allowed Claim or an Allowed Interest on the particular Periodic Distribution Date does not constitute a final distribution to such holder and is or has a value less than $50.

**9.10     *Fractional Securities; Fractional Dollars.***  No fractional shares of New Common Stock will be issued or distributed under the Plan.  Each Person entitled to receive New

-39-

Common Stock will receive the total whole number of shares of New Common Stock to which such Person is entitled. Whenever any distributions to a Person would otherwise call for distribution of a fraction of a share of New Common Stock, the actual distribution of such New Common Stock will be rounded to the next higher or lower whole number with fractions of less than or equal to one-half (½) being rounded to the next lower whole number. No consideration will be provided in lieu of fractional shares of New Common Stock that are rounded down. The total number of shares of New Common Stock to be distributed to each Class of Claims will be adjusted as necessary to account for the rounding provided herein. Any other provision of the Plan notwithstanding, neither the Debtors, the Disbursing Agent nor the Servicer will be required to make distributions or payments of fractions of dollars. Whenever any payment of a fraction of one dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down), with one-half (½) dollars being rounded down.

> **9.11** *Means of Cash Payment.* Payments of Cash made pursuant to the Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the Reorganized Debtors, by (a) checks drawn on or (b) wire transfer from a domestic bank selected by the Reorganized Debtors. Cash payments to foreign creditors may be made, at the option of the Reorganized Debtors, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

> **9.12** *Withholding and Reporting Requirements.* In connection with the Plan and all distributions thereunder, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan, (i) each holder of an Allowed Claim or Allowed Interest that is to receive a distribution of Cash or New Common Stock shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution, and (ii) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Reorganized Debtors for the payment and satisfaction of such tax obligations or has, to the Reorganized Debtors' satisfaction, established an exemption therefrom. Any Cash or New Common Stock to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as undeliverable pursuant to Section 9.8 hereof.

> **9.13** *Objection Deadline; Prosecution of Objections.* No later than the Claims/Interests Objection Deadline (unless extended by an order of the Bankruptcy Court), the Debtors or Reorganized Debtors, as the case may be, shall file objections to Claims and Interests

with the Bankruptcy Court and serve such objections upon the holders of each of the Claims and Interests to which objections are made, provided, however, that the Debtors and the Reorganized Debtors shall not object to Claims or Interests Allowed pursuant to the Plan.  Nothing contained herein, however, shall limit the Reorganized Debtors' right to object to Claims or Interests, if any, that are not Allowed under the Plan and that are filed or amended after the Claims/Interests Objection Deadline.  The Debtors and Reorganized Debtors shall be authorized to, and shall, resolve all Disputed Claims or Disputed Interests by withdrawing or settling such objections thereto, or by litigating to judgment in the Bankruptcy Court or such other court having jurisdiction over the validity, nature and/or amount thereof.

## ARTICLE X

## ALLOWANCE AND PAYMENT OF
## CERTAIN ADMINISTRATIVE CLAIMS

10.1 *Postpetition Facility Claim.*  On the Effective Date, the Postpetition Facility Claim shall be allowed in an amount to be agreed upon by the Debtors and the Postpetition Lenders not less than five Business Days prior to the Effective Date.  The Creditors Committee shall be notified of the agreed upon amount of the Postpetition Facility Claim upon agreement by the Debtors and the Postpetition Lenders. All obligations (other than contingent indemnity obligations) of the Debtors under the Postpetition Facility shall be satisfied either by payment in full in Cash on the Effective Date or the amendment and restatement of the Postpetition Credit Agreement with the Post-Effective Date Facility on the Effective Date, provided, however, that nothing herein that requires the indefeasible payment in full of all obligations under the Postpetition Facility on the Effective Date shall affect the commitment of the Postpetition Lenders to provide the Post-Effective Date Facility on the terms and conditions set forth in the Commitment Letter.  Notwithstanding anything to the contrary in the Plan, all of the rights, liens, claims, protections and priorities granted to the Postpetition Lenders under the Postpetition Facility shall remain in full force and effect until the Postpetition Facility Claim is paid or otherwise satisfied.

10.2 *Professional Claims.*

(a) *Final Fee Applications.*  All final requests for payment of Professional Fee Claims must be filed no later than the last day of the second full month after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

(b)    *Payment of Interim Amounts.*  Subject to the Holdback Amount, on the Effective Date, the Debtors or the Reorganized Debtors shall pay all amounts owing to Professionals for all outstanding amounts relating to prior periods through the Effective Date.  In order to receive payment on the Effective Date for unbilled fees and expenses incurred through such date, the Professionals shall estimate fees and expenses due for periods that have not been billed as of the Effective Date and shall deliver such estimate to counsel for the Debtors and the Creditors Committee.  A Professional receiving payment for the estimated period shall submit a detailed invoice covering such period in the manner and providing the detail as set forth in the Professional Fee Order no later than the last day of the first full month after the Effective Date.

(c)    *Holdback Escrow Account.*  On the Effective Date, the Debtors or the Reorganized Debtors shall pay to the Disbursing Agent, in order to fund the Holdback Escrow Account, Cash equal to the aggregate Holdback Amount for all Professionals.  The Disbursing Agent shall maintain the Holdback Escrow Account in trust for the Professionals with respect to whom fees have been held back pursuant to the Professional Fee Order.  Such funds shall not be considered property of the Reorganized Debtors.  Holdback Amounts owing to the Professionals shall be paid to such Professionals by the Disbursing Agent from the Holdback Escrow Account when such claims are finally allowed by the Bankruptcy Court.  When all Professional Claims have been paid in full, amounts remaining in the Holdback Escrow Account, if any, shall be paid to the Reorganized Debtors.  The remaining amount of Professional Fee Claims owing to the Professionals as of the Effective Date other than the Holdback Amount shall be paid to such Professionals by the Reorganized Debtors.

(d)    *Post-Effective Date Compensation.*  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate.

**10.3    *Substantial Contribution Compensation and Expenses Bar Date.***  Any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), 503(b)(4), and 503(b)(5) of the Bankruptcy Code must file an application with the clerk of the Bankruptcy Court, on or before a date which is thirty days after the Effective Date (the "503 Deadline"), and serve such application on counsel for the Debtors and the Creditors Committee and as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement.

**10.4    *Other Administrative Claims.***  All other requests for payment of an Administrative Claim (other than as set forth in Sections 10.1, 10.2 and 10.3 of this Plan) must be filed with the Bankruptcy Court and served on counsel for the Debtors or Reorganized Debtors no

later than thirty (30) days after the Effective Date. Unless the Debtors, the Reorganized Debtors or another party-in-interest objects to an Administrative Claim by the Claims/Interests Objection Deadline, such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is paid or payable by the Debtors in the ordinary course of business.

## ARTICLE XI

## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

**11.1    *Revesting of Assets.*** Except as otherwise explicitly provided in this Plan, on the Effective Date all property comprising the Estates (including Retained Actions and Retained Avoidance Claims) shall revest in each of the Debtors and, ultimately, in the Reorganized Debtors, free and clear of all Claims, liens, charges, encumbrances, rights and Interests of creditors and equity security holders (other than as expressly provided herein). As of the Effective Date, each of the Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

**11.2    *Discharge of Debtors.*** Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, rights, and Interests, including, but not limited to, demands and liabilities that arose before the Confirmation Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of the Debtors prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program regardless of whether such termination occurred prior to or after the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not (i) a proof of claim or interest based upon such debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim or Interest based upon such debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (iii) the holder of such a Claim,

right, or Interest accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all liabilities of and Interests in the Debtors, subject to the Effective Date occurring.

**11.3** *Compromises and Settlements.* Pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise and settle various Claims (a) against them and (b) that they have against other Persons. The Debtors expressly reserve the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against them and claims that they may have against other Persons, up to and including the Effective Date. After the Effective Date, such right shall pass to the Reorganized Debtors as contemplated in Section 11.1 of this Plan, without the need for further approval of the Bankruptcy Court, except as otherwise set forth in the Plan.

**11.4** *Release by Debtors of Certain Parties.* Pursuant to section 1123(b)(3) of the Bankruptcy Code, except as otherwise expressly provided in this Plan, effective as of the Effective Date, each Debtor, in its individual capacity and as a debtor-in-possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor or any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence or event in any manner related to any such Claims, Interests, restructuring or the Chapter 11 Cases. The Reorganized Debtors shall be bound, to the same extent the Debtors are bound, by all of the releases set forth above.

**11.5** *Release by Holders of Claims and Interests.* **On the Effective Date, (a) each Person that votes to accept this Plan; and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity (other than a Debtor), that has held, holds or may hold a Claim or Interest, in consideration for the obligations of the Debtors and the Reorganized Debtors under this Plan and the Cash, New Common Stock, and other contracts, instruments, releases, agreements or documents to be delivered in connection with this Plan (each, a "Release Obligor"), shall have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged each Released Party from any Claim or Cause of Action existing as of the Effective Date arising from, based on or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to, the Claim or Interest of such Release Obligor, and any act, omission, occurrence or event in any manner related to such subject matter, transaction or obligation.**

**11.6** *Setoffs.* The Debtors may, but shall not be required to, set off against any Claim or Interest, and the payments or other distributions to be made pursuant to the Plan in respect

-44-

of such Claim or Interest, claims of any nature whatsoever that the Debtors may have against such Claimholder or Interestholder; but neither the failure to do so nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such Claimholder or Interestholder.

**11.7    *Exculpation and Limitation of Liability.*** Except as otherwise specifically provided in this Plan, the Debtors, the Reorganized Debtors, the Ad Hoc Noteholders Committee, the members of the Ad Hoc Noteholders Committee in their capacities as members of the Ad Hoc Noteholders Committee, the Creditors Committee, the members of the Creditors Committee in their capacities as such, the Postpetition Lenders in their capacities as such, the Postpetition Agent in its capacity as such, the Senior Notes Trustee in its capacity as such, Blackstone, any of such parties' respective present officers, directors (but with respect to such parties related to the Debtors, only those that are Released Parties shall be covered hereby), employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, Cause of Action, or liability to one another or to any Claimholder or Interestholder, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the filing the Chapter 11 Cases, negotiation and filing of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, gross negligence or violation of written agreements with the Debtors, if any, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**11.8    *Indemnification Obligations.*** In satisfaction and compromise of the Indemnitees' Indemnification Rights: (a) all Indemnification Rights shall be released and discharged on and as of the Effective Date except for Continuing Indemnification Rights (which shall remain in full force and effect to the fullest extent allowed by law or contract on and after the Effective Date and shall not be modified, reduced, discharged, or otherwise affected in any way by the Chapter 11 Cases); (b) the Debtors or the Reorganized Debtors, as the case may be, covenant to maintain directors' and officers' insurance providing coverage for those Indemnitees currently covered by such policies for a period of two years after the Effective Date, shall maintain tail coverage under policies in existence as of the Effective Date, to the fullest extent permitted by such provisions, in each case insuring such parties in respect of any Claims, demands, suits, Causes of Action, or proceedings against such Persons based upon any act or omission related to such Person's service with, for, or on behalf of the Debtors in at least the scope and amount as currently maintained by the Debtors (the "Insurance Coverage") and hereby further indemnify such Indemnitees without

-45-

Continuing Indemnification Rights solely to pay for any deductible or retention amount that may be payable in connection with any claim covered under the foregoing Insurance Coverage; (c) the insurers who issue the Insurance Coverage are authorized to pay any professional fees and expenses incurred in connection with any action relating to any Indemnification Rights and Continuing Indemnification Rights; and (d) the Debtors or the Reorganized Debtors, as the case may be, hereby indemnify Indemnitees with Continuing Indemnification Rights and agree to pay for any deductible or retention amount that may be payable in connection with any claim covered under either the foregoing Insurance Coverage or any prior similar policy.

    **11.9** *Injunction.* The Confirmation Order shall provide that satisfaction, release, and discharge pursuant to Article XI of this Plan shall also act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent permissible under applicable law, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 of the Bankruptcy Code.

    **11.10** *Waiver of Distributions by Non-Employee Holders of Old Common Stock Interests and Their Affiliates.* Notwithstanding any other provision of the Plan to the contrary, non-employee holders of Old Common Stock Interests and their affiliates, as well as any assignee(s) or transferee(s) of the Claims of such entities, will not receive any distribution on account of any Claims that they may have against the Debtors other than the distribution of New Common Stock as set forth in this Plan; provided, however, that non-employee holders of Old Common Stock Interests and their affiliates will receive a full and complete release from the Debtors and those parties voting in favor of the Plan as set forth in Article XI of this Plan as a result of their waiver of such distribution rights.

## ARTICLE XII

## CONDITIONS PRECEDENT TO
## CONFIRMATION AND CONSUMMATION OF THE PLAN

    **12.1** *Conditions to Confirmation.* The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Section 12.3 of the Plan:

    (a) The Bankruptcy Court shall have approved a disclosure statement with respect to the Plan in form and substance acceptable to the Debtors, in their discretion, and the Creditors Committee, in its reasonable discretion.

-46-

(b)    The Confirmation Order shall be in form and substance acceptable to the Debtors, in their discretion, and the Creditors Committee, the Postpetition Agent and the Postpetition Lenders, in their reasonable discretion.

12.2    *Conditions to Consummation.* The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 12.3 of the Plan:

(a)    The Bankruptcy Court shall have entered one or more orders (which may include the Confirmation Order) authorizing the assumption and rejection of unexpired leases and executory contracts by the Debtors as contemplated by Article VIII hereof.

(b)    The Debtors shall have amended and restated or otherwise replaced the Postpetition Credit Agreement in a manner consistent with the terms of the Commitment Letter and all conditions precedent to the consummation thereof (other than the occurrence of the Effective Date of the Plan) shall have been waived or satisfied in accordance with the terms thereof and the lenders under the Post-Effective Date Facility shall be ready to fund the amounts required by the Debtors upon the Effective Date.

(c)    The Confirmation Order in form and substance acceptable to the Debtors, in their discretion,  and the Creditors Committee, in its reasonable discretion, shall have been entered by the Bankruptcy Court and shall be a Final Order, and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

(d)    Each Exhibit, document or agreement to be executed in connection with the Plan shall be in form and substance acceptable to the Debtors, in their discretion, and the Creditors Committee, in its reasonable discretion.

(e)    The Confirmation Date shall have occurred and the Confirmation Order shall, among other things, provide that:

(1)    the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(2)    all executory contracts or unexpired leases assumed by the Debtors during the Chapter 11 Cases or under the Plan shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Reorganized Debtors, notwithstanding any provision in such contract or lease (including those

-47-

described in sections 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits such assignment or transfer or that enables or requires termination of such contract or lease;

(3)    the transfers of property by the Debtors (A) to the Reorganized Debtors (1) are or shall be legal, valid, and effective transfers of property, (2) vest or shall vest the Reorganized Debtors with good title to such property free and clear of all liens, charges, Claims, encumbrances, or Interests, except as expressly provided in the Plan or Confirmation Order, (3) do not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law, and (4) do not and shall not subject the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws affecting successor or transferee liability, and (B) to Claimholders and Interestholders under the Plan are for good consideration and value and are in the ordinary course of the Debtors' businesses;

(4)    except as expressly provided in the Plan or the Confirmation Order, the Reorganized Debtors are discharged effective upon the Effective Date from any "debt" (as that term is defined in section 101(12) of the Bankruptcy Code), and the Debtors' liability in respect thereof is extinguished completely, whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or unfixed, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, or that arose from any agreement of the Debtors entered into or obligation of the Debtors incurred before the Effective Date, or from any conduct of the Debtors prior to the Effective Date, or that otherwise arose before the Effective Date, including, without limitation, all interest, if any, on any such debts, whether such interest accrued before or after the Petition Date;

(5)    the Plan does not provide for the liquidation of all or substantially all of the property of the Debtors and its confirmation is not likely to be followed by the liquidation of the Reorganized Debtors or the need for further financial reorganization; and

(6)    the New Common Stock (including the offer of New Common Stock through any warrant, option, right to subscribe, or conversion privilege or the sale of the New Common Stock upon exercise of such warrant, option, right to subscribe, or conversion privilege) to be issued under the Plan in

-48-

exchange for Claims against and Interests in the Debtors are exempt from registration under the Securities Act of 1933 pursuant to, and to the extent provided by, section 1145 of the Bankruptcy Code.

**12.3** *Waiver of Conditions to Confirmation or Consummation.* The conditions set forth in Sections 12.1 and 12.2 of the Plan may be waived, in whole or in part, by the Debtors (after consultation with the Creditors Committee) without any notice to parties in interest or the Bankruptcy Court and without a hearing, provided, however, that any such waiver(s) shall not affect the rights and remedies of the Postpetition Lenders under the Postpetition Facility Order, Section 10.1 of the Plan or under applicable law. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtors in their sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors in their sole discretion). The failure of the Debtors in their sole discretion to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE XIII

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including, among others, the following matters:

(a) to hear and determine pending motions for (i) the assumption or rejection or (ii) the assumption and assignment of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid;

(b) to adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or the Plan, or that were the subject of proceedings before the Bankruptcy Court prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests, and all controversies and issues arising from or relating to any of the foregoing;

(c) to adjudicate any and all disputes arising from the distribution or retention of the New Common Stock or the consideration under this Plan;

(d) to ensure that distributions to Allowed Claimholders and Allowed Interestholders are accomplished as provided herein;

(e) to hear and determine any and all objections to the allowance of Claims and Interests and the estimation of Claims and Interests, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any Claim or Interest, in whole or in part;

(f) to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(g) to issue orders in aid of execution, implementation, or consummation of the Plan;

(h) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i) to hear and determine all applications for compensation and reimbursement of Professional Claims under the Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

(j) to determine requests for the payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

(k) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan;

(l) to hear and determine all suits or adversary proceedings to recover assets of the Debtors and property of their Estates, wherever located;

(m) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n) to hear any other matter not inconsistent with the Bankruptcy Code;

(o)    to hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(p)    to enter a final decree closing the Chapter 11 Cases; and

(q)    to enforce all orders previously entered by the Bankruptcy Court.

Unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims, Interests, Retained Actions, Retained Avoidance Claims, and any motions to compromise or settle such disputes.  Despite the foregoing, if the Bankruptcy Court is determined not to have jurisdiction with respect to the foregoing, or if the Reorganized Debtors chooses to pursue any Retained Action or Retained Avoidance Claims in another court of competent jurisdiction, the Reorganized Debtors will have authority to bring such action in any other court of competent jurisdiction.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

**14.1    *Binding Effect.*** Upon the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all present and former Claimholders, all present and former Interestholders, other parties in interest and their respective heirs, successors, and assigns.

**14.2    *Modification and Amendments.*** The Debtors may alter, amend, or modify the Plan or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing provided that the Debtors shall not make any such alteration, amendment or modification that materially affects treatment, distributions or rights afforded to holders of Class 3 General Unsecured Claims and Class 4 Senior Note Claims without the consent of the Creditors Committee.  After the Confirmation Date and prior to substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtors may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan.

**14.3    *Allocation of Plan Distributions Between Principal and Interest.*** To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness

-51-

and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

 14.4    *Committees.*  Effective on the Effective Date, the Creditors Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to applications for Professional Claims and except with respect to obligations arising under confidentiality agreements entered by then which shall remain in full force and effect according to their terms.

 14.5    *Revocation, Withdrawal, or Non-Consummation.*

 (a)    *Right to Revoke or Withdraw.*  Each of the Debtors, in consultation with the Creditors Committee, reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date.

 (b)    *Effect of Withdrawal, Revocation, or Non-Consummation.*  If any of the Debtors revokes or withdraws the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan, any settlement, or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests with respect to such Debtor or Debtors), the assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be null and void.  In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver or release of any Claims by or against or Interests in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

 14.6    *Severability of Plan Provisions.*  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying confirmation of the Plan, the Bankruptcy Court shall, with the consent of the Debtors (in consultation with the Creditors Committee), have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be operative as interpreted, modified or deleted.  Notwithstanding any such

interpretation, modification or deletion, the remainder of the terms and provisions of the Plan shall in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

**14.7** *Notices.* Any notice required or permitted to be provided to the Debtors, Creditors Committee, Postpetition Agent, or under the Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

If to the Debtors:

> HAYNES INTERNATIONAL, INC.
> 1020 West Park Avenue
> Kokomo, Indiana 46904-9013
> Attn:  Chief Financial Officer

> *with copies to:*

> SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
> 333 West Wacker Drive, Suite 2100
> Chicago, Illinois  60606-1285
> Telephone:  (312) 407-0700
> Facsimile:  (312) 407-0411
> Attn:    John Wm. Butler, Jr., Esq.
>        J. Eric Ivester, Esq.
>        Kristin E. Rooney, Esq.

> - and -

> ICE MILLER
> One American Square
> Box 82001
> Indianapolis, Indiana 46282-0002
> Telephone:  (317) 236-2100
> Facsimile:  (317) 236-2219
> Attn:    Jeffrey A. Hokanson, Esq.
>       Ben T. Caughey, Esq.

If to the Creditors Committee:

> Akin Gump Strauss Hauer & Feld LLP
> 590 Madison Avenue
> New York, New York 10022
> Telephone: (212) 872-1000
> Fax: (212) 872-1002
> Attn:   Michael S. Stamer, Esq.
>         Phillip C. Dublin, Esq.

> - and -

> Baker & Daniels
> 300 North Meridian Street
> Indianapolis, Indiana 46204
> Telephone: (317) 237-1190
> Fax: (317) 237-1000
> Attn:   James M. Carr, Esq.

If to the Postpetition Agent:

> Congress Financial Corporation (Central)
> 150 South Wacker Drive
> Chicago, Illinois 60606
> Telephone: (312) 332-0420
> Fax: (312) 332-0424
> Attn: Portfolio Manager

> *with copies to:*

> Otterbourg, Steindler, Houston & Rosen, P.C.
> 230 Park Avenue
> New York, New York 10169
> Telephone: (212) 661-9100
> Fax: (212) 682-6104
> Attn: Jonathan N. Helfat, Esq.

**14.8**   ***Term of Injunctions or Stays.***   Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the Effective Date.

-54-

**14.9    *Governing Law.*** Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit or schedule to the Plan provides otherwise, (i) the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Indiana, and (ii) the laws of the state of incorporation of the Debtors shall govern corporate governance matters with respect to the Debtors, in either case without giving effect to the principles of conflicts of law thereof.

**14.10    *No Waiver or Estoppel.*** Each Claimholder or Interestholder shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors and/or their counsel, the Creditors Committee and/or its counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

14.11  *Conflicts.*  In the event that the provisions of the Disclosure Statement and the provisions of the Plan conflict, the terms of the Plan shall govern.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Dated:   Indianapolis, Indiana
         June 29, 2004

                              Respectfully submitted,
                              HAYNES INTERNATIONAL, INC.
                              AND THE DEBTOR AFFILIATES


                              By :  /s/  Francis J. Petro
                              Francis J. Petro
                              President and Chief Executive Officer
                              of Haynes International, Inc. and authorized
                              signatory for each of the other Debtors


John Wm. Butler, Jr. (IL ARDC No. 06209373)
J. Eric Ivester (IL ARDC No. 06215581)
Kristin E. Rooney (IL ARDC No. 06256593)
SKADDEN, ARPS, SLATE, MEAGHER
        & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606-1285
Telephone:  (312) 407-0700
Facsimile:  (312) 407-0411

        - and -

Jeffrey A. Hokanson
Ben T. Caughey
ICE MILLER
One American Square
Box 82001
Indianapolis, Indiana 46282-0002
Telephone:  (317) 236-2100
Facsimile:  (317) 236-2219

ATTORNEYS FOR HAYNES INTERNATIONAL, INC.
AND THE DEBTOR AFFILIATES


                              -57-

PLAN EXHIBIT A

RETAINED ACTIONS AND RETAINED AVOIDANCE CLAIMS

TO BE FILED BY THE EXHIBIT FILING DATE

PLAN EXHIBIT B

FORM OF CERTIFICATE OF INCORPORATION OF REORGANIZED DEBTORS

TO BE FILED BY THE EXHIBIT FILING DATE

PLAN EXHIBIT C

FORM OF BYLAWS OF REORGANIZED DEBTORS

TO BE FILED BY THE EXHIBIT FILING DATE

PLAN EXHIBIT D

<u>DESCRIPTION OF LONG-TERM INCENTIVE PLAN;
EMPLOYMENT AGREEMENTS AND/OR SEVERANCE AGREEMENTS
AS MODIFIED OF CERTAIN EXECUTIVES AND SENIOR MANAGEMENT</u>

TO BE FILED BY THE EXHIBIT FILING DATE

PLAN EXHIBIT E

FORM OF REGISTRATION RIGHTS AGREEMENT

TO BE FILED BY THE EXHIBIT FILING DATE

PLAN EXHIBIT F

<u>POST-EFFECTIVE DATE CREDIT AGREEMENT</u>

TO BE FILED BY THE EXHIBIT FILING DATE

PLAN EXHIBIT G

<u>REJECTED CONTRACTS AND LEASES</u>

TO BE FILED BY THE EXHIBIT FILING DATE

Exhibit 2

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

- - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| | x | |
| In re: | : | Chapter 11 |
| | : | |
| HAYNES INTERNATIONAL, INC., et al., | : | Case No. 04-05364 (AJM) |
| | : | |
| Debtors | : | Jointly Administered |
| | : | |
| | : | |
| | x | |

- - - - - - - - - - - - - - - - - - -

**NOTICE REGARDING (A) ENTRY OF ORDER CONFIRMING
THE FIRST AMENDED JOINT PLAN OF REORGANIZATION
OF HAYNES INTERNATIONAL, INC. AND ITS AFFILIATED DEBTORS
AND DEBTORS-IN-POSSESSION, (B) OCCURRENCE OF EFFECTIVE
DATE AND (C) NOTICE OF ADMINISTRATIVE BAR DATE**

      1.      **Confirmation of the Plan.**  On August ●, 2004, the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division (the "Bankruptcy Court") entered an order (the "Confirmation Order") confirming the First Amended Joint Plan of Reorganization of Haynes International, Inc., and Its Affiliated Debtors and Debtors-in-Possession, as modified, dated June 29, 2004 (the "Plan"), in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively the "Debtors").  Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings given to them in the Plan and the Confirmation Order.  A copy of the Plan and Confirmation Order may be obtained at your expense, by written request, from the Debtors' Claims Agent, Kurtzman Carson Consultants LLC, 12910 Culver Blvd., Suite 1, Los Angeles, CA 90066, Attn: Haynes International, Inc. et al., (website: www.kccllc.net/haynes); or from the Bankruptcy Court PACER website, www.insb.uscourts.gov.

      2.      **Effective Date.**  On August ●, 2004, the Effective Date of the Plan occurred.

      3.      **Discharge of Claims and Termination of Interests.**  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Confirmation Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of the

Debtors prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, right, or Interest accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors, subject to the Effective Date occurring.

4.    **Releases by Debtors and Debtors-in-Possession.**  Pursuant to section 1123(b)(3) of the Bankruptcy Code, but subject to Section 11.4 of the Plan, effective as of the Effective Date, each Debtor, in its individual capacity and as a debtor-in-possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring, or the Chapter 11 Cases. The Reorganized Debtors shall be bound, to the same extent the Debtors are bound, by all of the releases set forth above.

5.    **Releases by Holders of Claims and Interests.**  On the Effective Date, (a) each Person that votes to accept this Plan and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity (other than a Debtor) that has held, holds, or may hold a Claim or Interest, in consideration for the obligations of the Debtors and the Reorganized Debtors under this Plan and the Cash, New Common Stock, and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Plan (each a "Release Obligor"), shall have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from any Claim or Cause of Action existing as of the Effective Date arising from, based on, or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to, the Claim or Interest of such Release Obligor, and any act, omission, occurrence, or event in any manner related to such subject matter, transaction, or obligation.

6.    **Injunction.**  Pursuant to Section 11.9 of the Plan, the Confirmation Order provides that the satisfaction, release, and discharge pursuant to Article XI of the Plan shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under the Plan to the fullest extent permissible under applicable law, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 of the Bankruptcy Code.

7.    **Executory Contracts and Unexpired Leases to Be Assumed.** Pursuant to Section 8.1 of the Plan, section 365 of the Bankruptcy Code, and the Confirmation Order, each executory contract or unexpired lease to which the Debtors are a party is assumed and Reinstated as of the Effective Date, unless such executory contract or unexpired lease (a) was previously rejected by the Debtors, (b) was the subject of a motion or a notice to reject that was filed and served pursuant to order of the Bankruptcy court, on or before the Confirmation Date, (c) was listed on the schedule of rejected contracts and leases on Plan <u>Exhibit G</u>, or (d) expired prior to the Effective Date and/or was no longer executory on the Effective Date by its own terms. Copies of the Plan Exhibits may be obtained, at your own expense, upon written request to the Debtors' Claims Agent, Kurtzman Carson Consultants LLC, 12910 Culver Blvd., Suite 1, Los Angeles, CA 90066, Attn: Haynes International, Inc., <u>et al</u>. (website: <u>www.kccllc.net/haynes</u>); or from the Bankruptcy Court PACER website: <u>www.insb.uscourts.gov</u>. If the Contract(s) and/or Lease(s) to which you are a party are rejected, and such rejection gives rise to any claims against the Debtors, you must file a proof of claim in accordance with the procedures set forth in section 8(e) below.

8.    **Bar Dates.**

a.    <u>Administrative Claims Bar Date</u>. Except as otherwise provided below, unless previously filed, requests for payment of Administrative Claims must be filed in substan-tially the form of the Administrative Claim Request Form, attached hereto as <u>Exhibit A</u>, with the Claims Agent and served on the undersigned counsel to the Debtors at the address listed below **no later than September ●, 2004**. Any request not timely filed and served for payment of an Administrative Claim pursuant to Section 10.4 of the Plan shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors. The Debtors or the Reorganized Debtors may settle an Administrative Claim without further Bankruptcy Court approval. Unless the Debtors or the Reorganized Debtors object to an Administrative Claim by the Claims/Interests Objection Deadline (which is currently February ●, 2005, but which deadline may be extended), such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

b.    <u>Deadline for Submitting Professional Claims</u>. All final requests for payment of Professional Claims must be filed **no later than October ●, 2004**. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtors will employ and pay Professionals in the ordinary course of business.

c.    <u>Substantial Contribution Claims</u>. Any Person who requests compensa-tion or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and 503(b)(5) of the Bankruptcy Code must file an applica-tion with the clerk of the Bankruptcy Court **no later than September ●, 2004** (the "503 Deadline"), and serve such application on (i) the undersigned counsel to the Debtors at the address listed below and (ii) counsel to the Creditors Committee: Akin Gump Strauss Hauer &

Feld, LLP, 590 Madison Avenue, New York, NY 10022, Attn: Michael S. Stamer, Esq., and as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement.

      d.    <u>Exceptions to Requirement to File Administrative Claims</u>. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is paid or payable by the Debtors in the ordinary course of business.

      e.    <u>Bar Date for Proofs of Claim Relating to Rejected Executory Contracts or Unexpired Leases</u>. If the rejection by the Debtors (pursuant to the Plan or otherwise) of executory contract, or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, or such entities' properties unless a proof of claim is filed with the clerk of the Bankruptcy court and served upon (i) the undersigned counsel to the Debtors at the address listed below and (ii) counsel to the Creditors Committee within thirty (30) days after service of the later of (a) notice of the Confirmation Order or (b) other notice that the executory contract or unexpired lease has been rejected.

      f.    <u>Payments Related to Assumption of Executory Contracts and Unexpired Leases</u>. The provisions (if any) of each executory contract and unexpired lease  which are to be assumed and Reinstated under the Plan and which are or may be in default shall be satisfied solely by Cure. Any Person claiming that a monetary cure amount is due in connection with the assumption of any executory contract or unexpired lease as contemplated by section 365(b) of the Bankruptcy Code must file a monetary cure claim with the Bankruptcy Court asserting all alleged amounts, if any, accrued through the Effective Date (a "Cure Claim") **no later than September ●, 2004** (the "Cure Claim Submission Deadline"). Any party failing to submit a Cure Claim by the Cure Claim Submission Deadline, shall be forever barred from asserting, collecting, or seeking to collect any amounts relating thereto against the Debtors or Reorganized Debtors. The Debtors shall have until **October ●, 2004** (the "Cure Claim Objection Deadline"), to file an objection to the Cure Claim. Any disputed Cure Claims shall be resolved either consensually by the parties or by the Bankruptcy Court. Disputed Cure Claims shall be set for status at subsequent hearings following the Cure Claim Submission Deadline with separate evidentiary hearings to be set by the Bankruptcy Court as needed. If the Debtors do not dispute a Cure Claim, then the Debtors shall pay the Cure Claim, if any, to the claimant within twenty (20) days of the Cure Claim Objection Deadline. Disputed Cure Claims that are resolved by agreement or Final Order shall be paid by the Debtors within twenty (20) days of such agreement or Final Order.

Dated:  Indianapolis, Indiana
         August ●, 2004

HAYNES INTERNATIONAL, INC., et al.,


By:_____
Francis J. Petro
President and Chief Executive Officer
Haynes International, Inc., and authorized signatory
for each of the other Reorganized Debtors


- and -


By:_____
John Wm. Butler, Jr. (ARDC No. 06209373)
J. Eric Ivester (ARDC No. 06215581)
Kristin E. Rooney (ARDC No. 06256593)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606-1285
(312) 407-0700


- and -


By:_____
Jeffrey A. Hokanson
Ben T. Caughey
ICE MILLER
One American Square
Box 82001
Indianapolis, Indiana  46282-0002
Telephone: (317) 236-2100

Attorneys for the Reorganized Debtors


415015-Chicago S1A                              5

Exhibit A

<table>
<tr><td colspan="2">

**United States Bankruptcy Court**
Southern District of Indiana, Indianapolis Division

Haynes International, Inc., et al. Claims Processing
c/o Kurtzman Carson Consultants LLC

12910 Culver Blvd., Ste. I

Los Angeles, California 90066
</td><td>

**Administrative
Expense Claim
Request**
</td></tr>
</table>

**Debtor against which claim is asserted :**
Haynes International, Inc. , *et al.* 04-05364 through 04-05367

**Case Name and Number**
In re Haynes International, Inc., *et al.* 04-05364 through 04-05367

Chapter 11, Jointly Administered

**NOTE: This form should not be used to make a claim in connection with a request for payment for goods or services provided to the Debtors prior to the commencement of the case. This Administrative Expense Claim Request form is to be used solely in connection with a request for payment of an administrative expense arising after commencement of the case pursuant to 11 U.S.C. § 503.**

**Name of Creditor**
*(The person or other entity to whom the debtor owes money or property)*

**Name and Address Where Notices Should be Sent**

**Telephone No.**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

**THIS SPACE IS FOR COURT USE ONLY**

**ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:**

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated: _____

**1. BASIS FOR CLAIM**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other (Describe briefly)

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Your social security number _____
Unpaid compensation for services performed
from _____ to _____
        (date)                    (date)

**2. DATE DEBT WAS INCURRED**

**3. IF COURT JUDGMENT, DATE OBTAINED:**

**4. TOTAL AMOUNT OF ADMINISTRATIVE CLAIM: $_____**
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**5. Brief Description of Claim (attach any additional information):**

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Any attachment must be 8-1/2" by 11".

**8. DATE-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

**THIS SPACE IS FOR COURT USE ONLY**

**Date**

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)

# INSTRUCTIONS FOR FILING ADMINISTRATIVE EXPENSE CLAIM

*The instructions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to the general rules.*

## "DEFINITIONS"

### DEBTORS
The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

### CREDITOR
A creditor is any person, corporation, or other entity to whom the debtor owes a debt.

### ADMINISTRATIVE EXPENSE CLAIM
Any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases (other than a Postpetition Facility Claim, Professional Claim) Allowed under sections 503(b) or 114(e)(2) and entitled to priority pursuant to 507(a)(1) of the Bankruptcy Code, including, without limitation; (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtors' Estates and operating the businesses of the Debtors and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or prior to the Petition Date); (b) compensation for legal, financial advisory accounting and other services and reimbursement of expenses Allowed by the Bankruptcy Court under sections 328, 330, 331 and/or 503 of the Bankruptcy Code to the extent incurred prior to the Effective Date; and (c) all fees or charges assessed against one or more of the Estates under section 1930 of chapter 123 of title 28 of the United States Code.

### ADMINISTRATIVE BAR DATE
Pursuant to section 10.4 of the Plan and paragraph 25 of the Confirmation Order, all requests for payment of an Administrative Claim that has arisen between March 29, 2004 and August 16, 2004 must be filed no later than September 30, 2004.

## Items to be completed in Administrative Expense Claim form (if not already filled in):

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the Debtors owe money or property, and the Debtors' account number(s), if any. If anyone else has already filed an Administrative Expense Claim form relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this Administrative Expense Claim form replaces or changes an Administrative Expense Claim form that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**
Check the type of debt for which the Administrative Expense Claim form is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the Debtors, fill in your social security number and the dates of work for which you were not paid.

**2. Date Debt Incurred:**
Fill in the date when the Debtors first owed the debt.

**3. Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Total Amount of Administrative Claim:**
Fill in the total amount of the entire Claim. If interest or other charges in addition to the principal amount of the Claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**5. Brief Description of Claim:**
Describe the Administrative Expense Claim including, but not limited to, the actual and necessary costs and expenses of operating one or more of the Debtors' Estates or any actual and necessary costs and expenses of operating one or more of the Debtors' businesses.

**6. Credits and Setoffs:**
By signing this Administrative Expense Claim form, you are stating under oath that in calculating the amount of your Claim you have given the Debtors credit for all payments received from the Debtors.

2

**7. Supporting Documents:**
You must attach to this Administrative Expense Claim form copies of documents that show the Debtors owe the debt claimed or, if the documents are too lengthy, a summary of those documents.  If documents are not available you must attach an explanation of why they are not available.

**8. Date-Stamped Copy:**
To receive an acknowledgement of the filing of your Claim, enclose a stamped, self-addressed envelope and copy of this Administrative Expense Claim form.